UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

|

**STEPHEN E. BARNES**, as a shareholder, |
director, and officer of and on behalf of |
**CELLINO & BARNES, P.C.**, and |

Plaintiff, |

- v - |

**CELLINO & CELLINO, LLP** and |
**DOES 1** through **4**, inclusive, |

Defendant. |

———————————————————————

**VERIFIED COMPLAINT**

Civ. Action No.:
__19_-cv-_729___-_____

JURY TRIAL DEMANDED

Plaintiff Stephen E. Barnes ("Mr. Barnes"), as a shareholder, director, and officer of, and

on behalf of, Cellino & Barnes, P.C. ("C&B" or "Cellino & Barnes" or "Plaintiff"), by and through

his attorneys, Duke Holzman Photiadis & Gresens LLP, as and for the following Verified

Complaint against Defendant Cellino & Cellino, LLP ("C&C" or "Cellino & Cellino" or

"Defendant") and DOES 1 through 4, inclusive (the "DOE Defendants") (collectively

"Defendants"), hereby alleges as follows:

## **INTRODUCTION**

**1.**     Mr. Barnes, derivatively on behalf of C&B, initiates the instant action to protect

Cellino & Barnes from the illicit infringement, unfair competition, and misappropriation of

goodwill caused by the formation of a new, competing personal injury law firm and its confusingly

similar name: Cellino & Cellino.

**2.**     C&B therefore brings this action pursuant to the trademark and unfair competition

laws of the United States and the State of New York. C&B seeks all remedies available to it,

including, without limitation, an injunction and damages against C&C for (a) its infringement of

C&B's Federal and New York State trademark rights and (b) C&C's violation of the related unfair competition laws.

3.      C&B is the owner the following trademarks registered with the United States Patent and Trademark Office ("USPTO") (the "C&B Marks" or "Marks")[1], along with the associated good will, which were attained through great effort and expense to the firm and its shareholders:

| Mark | USPTO Number | Date Issued | Defined Term |
|------|-------------|-------------|-------------|
| DON'T WAIT, CALL 8! | 4,312,953 | April 2, 2013 | "Call 8 Mark" |
| DON'T WAIT, TEXT 8! | 4,480,663 | February 14, 2014 | "Text 8 Mark" |
| CELLINO & BARNES | 4,963,627 | May 24, 2016 | "Logo Mark" |
| CELLINO AND BARNES | 4,963,628 | May 24, 2016 | "Name Mark" |
| 888-8888 | 5,489,199 | June 12, 2018 | "888 Mark" |
| (800)888-8888 | 5,483,446 | June 5, 2018 | "800 Mark" |

4.      Plaintiff also cultivated and used common law marks, including, but not limited to: (a) billboards featuring the names and likenesses of Messrs. Barnes and Cellino; (b) a website with a distinctive look and feel; (c) marketing materials in print, audio, and electronic form; and (d) an extensive open-air advertising campaign involving billboards and other publicly posted materials (collectively the "Common Law Marks").

5.      Upon information and belief, Cellino & Cellino was recently formed by Anna Marie, Annmarie, and Jeanna Cellino, the spouse and children of Ross Cellino, a 50% shareholder and named attorney of Plaintiff.[2]

---

[1]      Annexed hereto as **Exhibits 1** through **6**, respectively, are copies of the registration extracts for all of the trademarks owned by Cellino & Barnes and registered with the USPTO—the Call 8 Mark, Text 8 Mark, Logo Mark, Name Mark, 888 Mark, and 800 Mark.

[2]      Annexed hereto as **Exhibit 7** & **8**, respectively, are news articles relating to the formation of Cellino & Cellino.

6.      Cellino & Cellino has no right in or to, and lacks permission to use, Cellino & Barnes' intellectual property, including, without limitation, the C&B Marks, the Common Law Marks, or any name or mark that is confusingly similar thereto.

7.      Nonetheless, by forming, operating, and advertising itself as a personal injury law firm,[3] C&C is unlawfully attempting to misappropriate, infringe, trade off the good will, and capitalize off C&B's reputation, brand, goodwill, trademarks, and unparalleled success.

8.      C&B is one of the most successful and profitable personal injury law firms in the history of the United States. Since 1992, Stephen Barnes and Ross Cellino built C&B into a national, multi-million-dollar personal injury law firm that has experienced meteoric growth across every metric of its business and experienced unparalleled success for both itself and its clients. C&B invested over $150 million in marketing and advertising to create its "Cellino & Barnes" brand, which is recognized across the country. The Cellino & Barnes "jingle" and "888-8888" telephone numbers are etched in the minds of the public, especially Western New York natives. From television ads to radio broadcasts to billboards, Cellino & Barnes has become a household name in Western New York, throughout New York State, and across many parts of the Country.

9.      C&B reached such levels of success and profitability that the firm's shareholders received over $65,000,000.00 **EACH** since 2012 and are projected to make an 8-figure income for the remainder of their careers.

10.      It is because of the prosperity of C&B that C&C—self-proclaimed to be a personal injury law firm—has undoubtedly chosen to market itself with such a confusingly similar name, instead of trying to create a brand of its own.

---

[3]      Annexed hereto as **Exhibit 9** is an e-mail from the Bar Association of Erie County, titled "Career Opportunities from the Bar Association of Erie County," dated April 26, 2019, demonstrating that C&C is seeking to hire a personal injury attorney to join its firm.

11.     Indeed, upon information and belief—through the close familial relationship between the members of C&C and one of C&B's shareholders, Ross Cellino—Cellino & Cellino is privy to, utilizing, and misappropriating inside information directly from Mr. Cellino.

12.     Upon information and belief, Mr. Cellino has been involved in and/or facilitated the creating, operating, and marketing the competing C&C firm, as well as in choosing the confusingly similar Cellino & Cellino name.

13.     Even if Mr. Cellino were not involved, C&C is nonetheless liable to C&B for willfully, intentionally, and unlawfully infringing upon C&B's intellectual property and common law rights by adopting a confusingly similar name, in the same specialized area of law, and knowing the strength and fame of the Cellino & Barnes brand.

14.     However, Mr. Cellino's ill motives and involvement are relevant in demonstrating C&C's intent to capitalize off C&B's good will and reputation.

15.     For example, in May 2017, Mr. Cellino commenced a special proceeding pursuant to BCL § 1104 for the dissolution of C&B, captioned <u>Cellino v. Cellino & Barnes, P.C., et al.</u>, Erie County Index No.: 806178/2017 (the "Dissolution Proceeding").

16.     The Dissolution Proceeding is still pending, but to date, Mr. Cellino has been unable to attain his desired dissolution.

17.     Throughout the Dissolution Proceeding, Mr. Barnes and C&B argued that Mr. Cellino lacks a bona fide basis to apply for dissolution, but rather applied to dissolve C&B merely as a conduit to create a "legacy" firm for his family and siphon off the goodwill of C&B.

18.     Indeed, Mr. Cellino demonstrated insistent and unyielding focus throughout the Dissolution Proceeding, not on what is in the best interest of Cellino & Barnes—as his fiduciary duties demand—but rather, on opening a new firm known as "Cellino & Cellino".

19.     However, Mr. Cellino was and is prohibited from opening a new and competing law firm by: an existing New York State Supreme Court Order issued in the Dissolution Proceeding, his fiduciary duties, his duty of loyalty to C&B, and common law.[4]

20.     Notwithstanding, upon information and belief, Mr. Cellino opened, assisted in the opening, and/or otherwise facilitated the formation and opening of the competing Cellino & Cellino law firm.

21.     On April 24, 2019, according to New York State records, Cellino & Cellino was formed and registered with the New York Secretary of State by Mr. Cellino's wife and one or more of his attorney children.[5]

22.     Despite Mr. Cellino's position that he "has nothing to do" with Cellino & Cellino, the facts and admissions established throughout the Dissolution Proceeding, as set forth below, demonstrate Mr. Cellino is intimately and integrally involved with this new Cellino & Cellino firm.

23.     For instance, *on May 5, 2017*—less than a week before Mr. Cellino filed the Dissolution Proceeding—the domain name *www.CellinoandCellino.com was registered* by an unknown party.[6] That same domain name, upon information and belief, was updated on April 10, 2019—a mere two (2) weeks before the formation of C&C. (See Ex. 13).

---

[4]     Annexed hereto as **Exhibit 10** is a copy of Justice Deborah A. Chimes, J.S.C.'s Status Quo Order, entered in the Dissolution Proceeding on May 15, 2017.

[5]     Annexed hereto as **Exhibit 11** is a copy of the information available for Cellino & Cellino on the New York Department of State website.

Annexed hereto as **Exhibit 12** is a copy of the certificate of registration for Cellino & Cellino, LLP.

[6]     Annexed hereto as **Exhibit 13** is a copy of the domain name filing demonstrating the date of registration and update for www.CellinoandCellino.com.

24.     Upon information and belief, the creation of C&C was not a bona fide attempt to create a legitimate independent law firm; rather, this new law firm is Mr. Cellino's attempt to circumvent court Orders and his fiduciary duties to C&B, force a dissolution he otherwise has been unable to obtain, join his new, long-sought after Cellino & Cellino legacy firm, and in doing so unlawfully usurp the goodwill and reputation of C&B.

25.     Notwithstanding Mr. Cellino's involvement, the creation of C&C, in and of itself, independently infringes upon C&B's trademark.

26.     Plaintiff does not dispute that the attorney members of C&C have the right to practice law and can compete with C&B. However, C&C does not have the right to infringe upon C&B's intellectual property or otherwise unlawfully trade off and usurp the reputation and good will established by C&B through great cost and effort.

27.     Upon information and belief, C&C can name its law firm in a way that is not confusingly similar to and does not infringe upon the C&B brand, trademarks, or otherwise attempt to capitalize off C&B's reputation and success.

28.     Upon information and belief, there exist multiple alternative firm names that (a) are permissible under the New York Professional Rules of Conduct, (b) permit the principals of C&C to utilize their names in a non-confusing manner, and (c) do not infringe on C&B's intellectual property rights or otherwise unfairly compete with C&B.

29.     To the contrary, rather than creating a brand of its own, upon information and belief, C&C chose its confusingly similar name—just as someone reserved the domain name www.CellinoandCellino.com—for the express purpose of capitalizing off the reputation and good will of the C&B brand. C&C is also using the confusingly similar phone number 888-2020—a combination of the C&B trademarked 888 numbers and its former number 854-2020.

30.     Since 2001, Messrs. Cellino and Barnes have spent more than $150 million promoting and advertising the brand "Cellino & Barnes"—$60 million of which has been spent in the last five (5) years alone.

31.     Now, Cellino & Cellino is trying to profit off that investment and the goodwill of the Cellino & Barnes firm, brand, and the enormous amount of brand development and advertising investments C&B and its shareholders made.

32.     The Cellino family is not permitted to open a law firm (a) by infringing upon C&B's trademark, good will, and great advertising expense and success and/or (b) with or accepting the assistance and involvement of Ross Cellino in breach of his duty of loyalty to C&B.

## THE PARTIES

33.     Plaintiff Stephen E. Barnes, Esq. is, and at all pertinent times alleged herein was, a natural person residing in the State of New York, County of Erie.

34.     Plaintiff Cellino & Barnes, P.C. is, and at all pertinent times alleged herein was, a Professional Law Corporation duly formed and operating under the laws of the State of New York and domiciled with an office for the purpose of conducting business in the State of New York, County of Erie.

35.     Upon information and belief, Cellino & Cellino, LLP is, and at all pertinent times alleged herein was, a Limited Liability Partnership formed and operating under the laws of the State of New York and domiciled with its principal place of business in the State of New York, County of Erie.

36.     Plaintiff lacks full and complete knowledge of the true names and capacities of the parties sued herein as DOES 1 through 4, inclusive, and therefore, brings this action against them under such fictitious names. When the true names and capacities of these DOE Defendants are

ascertained by Plaintiffs, Plaintiffs will seek leave to amend this Complaint to allege such true names and capacities of the DOE Defendants.

## NATURE OF THE ACTION

37.     This action is for monetary and injunctive relief—including, without limitation, a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction—arising from C&C's infringement of C&B's trademarks and other claims of unfair competition and false designation of origin, under both Federal and New York State law, including under: (1) Section 32 of the LANHAM ACT, 15 U.S.C. § 1114, for trademark infringement; (2) Section 43(a) of the LANHAM ACT, 15 U.S.C. § 1125(a), for unfair competition; (3) Section 43(c) of the LANHAM ACT, 15 U.S.C. § 1125(c), for dilution; (4) Section 43(d) of the LANHAM ACT, 15 U.S.C. § 1125(d), for cybersquatting; (5) N.Y. GEN. BUS. LAW § 360 for trademark infringement; (6) N.Y. GEN. BUS. LAW § 349 unfair business practices; (7) N.Y. GEN. BUS. LAW § 360-L for unfair competition and dilution; (8) N.Y. GEN. BUS. LAW § 133 for use of a name with intent to deceive; and (9) common law trademark infringement, unfair competition, dilution and injury to business reputation. The foregoing arises from Defendant's unauthorized use of C&B's registered trademarks, including, without limitation, U.S. Registration No. 4,963,628 (CELLINO AND BARNES) and U.S. Registration No. 4,963,627 (CELLINO & BARNES).

38.     Specifically, C&C is infringing on the C&B Marks through its use of certain purported "marks" including, without limitation, "Cellino & Cellino" and "Cellino and Cellino" in its trade as well as, upon information and belief, the domain names www.CellinoandCellino.com, www.cellinolaw.com, and/or similarly confusing domain names (collectively the "Infringing Marks").

39.     Plaintiff also cultivated its Common Law Marks, including, but not limited to: (a) billboards featuring the names and likenesses of Messrs. Barnes and Cellino; (b) a website with a distinctive look and feel; (c) marketing materials in print, audio, and electronic form; and (d) an extensive open-air advertising campaign involving billboards and other publicly posted materials.

40.     To the extent C&C is not the registrant of the domain name www.CellinoandCellino.com and/or www.cellinolaw.com, the DOE Defendants have taken actions that infringe upon the C&B Marks, including the reservation and/or registration of www.CellinoandCellino.com and/or www.cellinolaw.com. Upon information and belief, the DOE Defendants are acting in concert with, at the direction of, and/or for the sole benefit of C&C.

41.     By this Complaint, Plaintiff seeks to enjoin Defendants, preliminarily and permanently, from utilizing any Infringing Marks, including the name Cellino & Cellino, or any other form in close proximity thereto which is likely to interfere with or cause confusion with Plaintiff's service marks and/or trademarks—including the C&B Marks.

42.     Plaintiffs seek injunctive and monetary relief.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) & (b), and pursuant to the principles of pendant and supplemental jurisdiction under 28 U.S.C. § 1367.

44.     Personal jurisdiction exists over Defendant because, upon information and belief, Defendant conducts business in the State of New York and in this District, has caused and continues to cause damage to Plaintiff in this District, or other otherwise avails itself of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

45.     Personal jurisdiction exists over the DOE Defendants because, upon information and belief, the DOE Defendants' actions are in direct furtherance of Defendant's conducting of business in the State of New York and in this District, the DOE Defendants themselves conduct business in the State of New York and in this District, or other otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over the DOE Defendants does not offend traditional notions of fair play and due process.

46.     Venue is proper in this District under 28 U.S.C. § 1391(b) because (a) Defendant conducts business in this district, (b) upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District, and (c) Defendant caused damage to Plaintiff in this District.

47.     This derivative action is properly maintained pursuant to BCL § 626.

## FACTS

### I.     History of Cellino & Barnes

48.     In 1992, Stephen Barnes joined Cellino, Bernstein & Dwyer, LLP—the predecessor of C&B—and shortly thereafter became a named partner. Mr. Barnes has been a named partner/co-owner of C&B ever since.

49.     Messrs. Cellino and Barnes worked for over twenty (20) years to build the C&B firm, reputation, and brand. While the firm had various names, in 1994, it changed its name to Cellino & Barnes LLP.  In 1998, Messrs. Cellino and Barnes chose to change the organizational

structure of C&B from a partnership to a professional corporation—i.e., from Cellino & Barnes, LLP to Cellino & Barnes, P.C.[7] (See Ex. 14).

50.     Messrs. Cellino and Barnes decided to change the professional status of the firm to a professional corporation principally because they sought to take advantage of the limited liability and tax status afforded by the corporate structure as opposed to a partnership. Since incorporating in 1998, C&B has at all times remained a Professional Corporation.

51.     When C&B initially incorporated, Messrs. Cellino and Barnes made the strategic decision to focus on handling personal injury matters. As such, C&B currently handles virtually all personal injury matters, including, without limitation, automobile accidents, premises liability, medical malpractice, products liability, mass tort liability, and asbestos litigation.

52.     Since the formation of the firm, the only time C&B's name did not include the name "Cellino"—and indeed the only time "Cellino" was not the first-listed name—was during a brief respite from 2005 to 2007.

53.     In 2005, C&B changed its name to The Barnes Firm, P.C. because Mr. Cellino was suspended from the practice of law for six (6) months by the New York Supreme Court, Appellate Division, Fourth Department. The name change was extended to over nineteen (19) months while Mr. Cellino applied for and obtained reinstatement to the bar.

54.     During Mr. Cellino's suspension, he was required to divest himself of his shares in C&B, which precipitated the changing of the firm's name.

---

[7]     Annexed hereto as **Exhibit 14** are copies of C&B's corporate organizational and structural documents, including, without limitation, those regarding its incorporation in 1998.

55. Once Mr. Cellino was readmitted to the practice of law in 2007, Mr. Barnes welcomed him back to the firm and reinstated his shareholder status. At Mr. Cellino's request, Mr. Barnes agreed to change the firm name back to Cellino & Barnes, P.C.

56. While Messrs. Cellino and Barnes focused on building the C&B firm, reputation, and brand before 2005—with great success—the true meteoric and unprecedented growth and success of the firm occurred after the firm changed its name back to Cellino & Barnes in 2007. The time period after 2007 is also when Messrs. Cellino and Barnes invested the bulk of the over $150 million into the advertising and marketing strategies for C&B.

57. As it turns out, no one could have predicted the level of success and notoriety the firm and its C&B brand would attain as a result of its marketing strategies.

58. At the time of incorporation in 1998, C&B had one (1) office in Buffalo, New York, and three (3) attorneys, including Messrs. Cellino and Barnes. The firm began advertising its services and, slowly, added additional lawyers and employees to the firm.

59. In 2000, C&B opened an office in Rochester, New York, with only one (1) attorney. The Rochester office has grown to include nine (9) attorneys.

60. In 2002, C&B built a satellite office on Grider Street in Buffalo across from Erie County Medical Center ("ECMC"), the area's largest trauma hospital. The Grider office was expanded in 2015 at a cost of approximately $1 million, and currently has two (2) attorneys and five (5) employees in working there.

61. In 2008, Messrs. Cellino and Barnes began focusing on creating a "downstate presence" for C&B. In that year, C&B opened an office on Long Island in Melville, New York.

62. In 2009 and 2010, C&B opened offices in Garden City, New York, and Midtown Manhattan, New York, respectively. C&B's goal was to provide legal services to clients in Nassau

County and all five (5) boroughs of New York City. Today C&B has thirty-three (33) attorneys in the downstate offices, including nine (9) attorneys in Garden City, eight (8) attorneys in Melville, and fifteen (15) attorneys in Manhattan.

63.     Unquestionably, C&B has become one of the largest, if not the largest, and most successful personal injury firms in the country.

64.     On the whole, C&B currently has over fifty (50) attorneys and about two-hundred thirty (230) employees throughout its offices. Many of its employees have worked at C&B for more than a decade, some for as long as twenty (20) years.

65.     C&B handled more than 50,000 cases in its history, and has over 9,000 current clients. In fact, on average, it receives over 36,000 calls from perspective clients each year.

66.     C&B is currently operating at a high level, extremely profitable and lucrative, and currently more successful than it has ever been.

67.     In the last ten (10) years, the firm achieved settlements of more than **$1.5 BILLION** and generated profits of more than $165 million. Through the end of May 2019, C&B achieved settlements of more than $85 million, and is on track for a $202 million year by years-end.

68.     Over the last five (5) years, C&B's settlements have increased by approximately 54% and profits have increased by over 100%.

69.     In terms of the profits Messrs. Cellino and Barnes received as shareholders as a result of C&B's success, the following figures reflect the distributions paid to **each** of them over the past five (5) years:

|      |   |               |
|------|---|---------------|
| 2014 | - | $8 million    |
| 2015 | - | $10 million   |
| 2016 | - | $10.75 million|
| 2017 | - | $12 million   |
| 2018 | - | $15.5 million |

70.     Beyond settlements and profits, as discussed in full below, the creation of the C&B brand is unmistakable and its importance to the firm and its past and continued success cannot be overstated.

71.     Cellino & Cellino has now been formed and is improperly attempting to trade off the C&B Marks and Cellino & Barnes brand.

II.     **Cellino & Cellino's Infringement on the Cellino & Barnes Brand**

A.      **Cellino & Barnes has a valid, registered trademark and is entitled to protection for the same.**

72.     Cellino & Barnes is the owner of a valid and enforceable United States Trademark for "Cellino & Barnes" and "Cellino and Barnes" both of which have been in continuous use since at least 2007. (Exs. 3 & 4).

73.     Moreover, C&B invested substantially in expanding the scope, reach, and strength of that brand.

74.     The name Cellino & Barnes, the firm's jingle, and the principal telephone numbers used by the firm (888-8888 and 800-888-8888) are so widely and intimately known by Western New Yorkers that, upon information and belief, the Court could take judicial notice.

75.     One cannot watch television in Western New York without seeing numerous advertisements regarding the Firm.

76.     The C&B jingle is widely known: "Cellino & Barnes, injury attorneys. Call 888-8888."

77.     The C&B brand is so well known throughout Western New York, and indeed across the country, that after Mr. Cellino filed for dissolution the following occurred:

a.  The Buffalo News was peppered with articles pertaining to C&B—which continues to occur—including one pertinent article asking "who gets the jingle?"[8] (Exs. 14-25);

b.  The long-standing hit television show Saturday Night Live did a skit called "Shark Tank – Legal Edition" featuring a parody of C&B **and** its jingle[9] (Exs. 26 & 27);

c.  There was a long-standing "Cellino & Barnes Celebrity Jingle Challenge", wherein celebrities across the country would perform their own rendition of the C&B jingle[10];

d.  There was a play created, and subsequently performed in New York City, Buffalo, and Los Angeles titled "Cellino v. Barnes"—based on the Dissolution Proceedings[11] (Exs. 28, 29, & 30);

e.  Celebrity Chrissy Teigen tweeted her intent to "reunite" Cellino and Barnes[12] (Ex. 31); and

f.  The Dissolution Proceeding was discussed on national comedy late-night shows, such as Late Night with Stephen Colbert. [13]

---

[8]  Annexed hereto as **Exhibits 15** through **26** are copies of various news articles regarding Cellino & Barnes since Mr. Cellino filed the Dissolution Proceeding in May 2017.

[9]  A version of the Saturday Night Live ("SNL") skit can be seen at: "https://www.youtube.com/watch?v=hpmjtZWVN0A". Moreover, annexed hereto as **Exhibit 27 & 28** are Buffalo News Articles regarding the SNL skit, including one wherein Mr. Barnes was interviewed regarding the skit.

[10]  Certain videos of the Celebrity Jingle Challenge can be seen at: "https://www.youtube.com/watch?v=-qHwRwX6UzE".

[11]  Annexed hereto as **Exhibits 29**, **30**, & **31** are copies of the respective play bills for the Cellino v. Barnes play in New York City, Buffalo, and Los Angeles.

[12]  Annexed hereto as **Exhibit 32** is a news article regarding Ms. Teigen's tweet to reunite Messrs. Cellino and Barnes.

[13]  Certain videos of the Late Night Show with Stephen Colbert, parodying Cellino and Barnes, can be seen at the following sites: "https://www.youtube.com/watch?v=mznXMp1_61w" and "https://www.youtube.com/watch?v=dJJCmz0vGDI".

78.     Likewise, the trademarked firm name itself has been branded through the use of scores of millions in advertising dollars.

79.     The brand Cellino & Barnes is inherently distinctive, has acquired secondary meaning, is a famous mark, and is associated with and to personal injury law in Western New York, at least, if not throughout New York, in New York City, and/or across the Country. Indeed, there may not be a better example of a law firm in history that is known on such a widespread level.

80.     Cellino & Cellino is infringing on the C&B Marks. Upon information and belief, C&C opened, began operating, and began advertising on June 1, 2019. The Cellino & Cellino advertisements infringe upon the C&B Marks and unfairly compete with Cellino & Barnes.

81.     The recent formation, operation, and advertisement of a competing Cellino & Cellino personal injury law firm will cause confusion in the marketplace. Upon information and belief, the intent of Cellino & Cellino is to create that confusion and capitalize off the monumental success of C&B and its brand.

**B.      The likelihood of confusion in the minds of consumers.**

1.      Strength of the Cellino & Barnes mark

82.     The Cellino & Barnes mark is strong.

83.     In addition to being distinctive, the Mark has further acquired distinctiveness and secondary meaning garnered as a result of significant and substantial advertising and marketing efforts.

84.     Over the course of more than twenty (20) years, C&B invested well over $150 million to create and build the "Cellino & Barnes" brand, which, as discussed above, has become

famous, is now a recognized and household name in Western New York, and is well-established across New York State and throughout the United States.

2.      Similarity of the Marks

**85.**    Plaintiff's marks include "Cellino & Barnes" and "Cellino and Barnes."

**86.**    Defendant's name is "Cellino & Cellino."

**87.**    Both law firms are plaintiffs' personal injury law firms.

**88.**    The two marks are similar both literally and in commercial expression.

**89.**    Given the ubiquitous recognition of the Cellino & Barnes brand, and the fact that the Cellino & Cellino law firm is only newly minted (it did not exist until about a month ago), the consuming public will likely associate the source of the Cellino & Cellino firm to be Cellino & Barnes.

**90.**    The similarity between Cellino & Barnes and Cellino & Cellino is obvious: C&C is attempting to capitalize off the C&B brand by using the "Cellino" name instead of creating its own distinguished brand.

**91.**    Mr. Cellino explained his intent to capitalize on using the "Cellino" name and its status as the "first name" in C&B when pitching "Cellino & Cellino" to existing C&B attorneys. See infra ¶¶ 119-23.

**92.**    Jeanna Cellino, Esq.—one of the attorneys at C&C—was interviewed by *The Buffalo News* regarding the formation of C&C and is quoted as saying: "I'm sure the public will be very excited to see more Cellino faces[.]" (Ex. 7).

**93.**    Given the time, effort and expense invested by C&B, including its efforts to brand the "Cellino" portion of the "Cellino & Barnes" name, and its association with the reputation and

good will of the Cellino & Barnes personal injury law firm, it is readily apparent the reason why Defendant's chose to name its personal injury law firm "Cellino & Cellino."

94.     The similarity between C&C and C&B becomes even clearer when looking at a primary method prospective clients will use to obtain the contact information for each respective firm: Google.

95.     C&B spent considerable capital in expanding C&B's accessibility on Google, including, but not limited to, obtaining greater searchability as a result of C&B creating a "national brand."

96.     This national brand classification by Google's algorithms gives each of C&B's individual office locations a distinct advantage in authority with both search engine optimization ("SEO") rankings and pay-per-click ("PPC") performance. In short, all of C&B's locations benefit nationwide and locally due to the culmination of mentions and performed searches across the country. This means easier and more economical access to the C&B brand by potential clients.

97.     This process helps ensure online search results when potential clients search certain legal terms and/or the names "Cellino" and/or "Barnes."

98.     Due to the high-level of competition in personal injury law, Moz.com specifically evaluated the legal field. In Moz.com's evaluation of 500 different legal keywords in the three most competitive states in the legal industry, C&B was one of two (2) local businesses that rose to the top.

99.     The research shows that C&B greatly benefits across all of its offices against local firms due to Google categorizing C&B as a national brand and investment in increasing its media exposure. This marketing strategy was created for the express purpose of creating a distinct advantage in authority for Cellino & Barnes in both SEO rankings and PPC performance.

**100.**   Indeed, C&B's focus on SEO improvement created a demonstrable and documented increase in the firm's accessibility to prospective clients and, correspondingly, increased client intake.

**101.**   Now, Cellino & Cellino is illicitly attempting to benefit from C&B's investment and spending in that arena. Upon information and belief, prospective clients who now attempt to search for Cellino & Barnes will be directed to the competing law firm Cellino & Cellino.

**102.**   The time, effort, and money that went into the creation and increased accessibility of the C&B brand through such efforts would be misappropriated if Cellino & Cellino is permitted to continue infringing on C&B's brand—i.e. the brand that has generated more than $2 billion in settlements.

3.    <u>Proximity of Parties' Products in Marketplace and C&C's intent to compete with C&B</u>

**103.**   There is no question that C&C intends to compete with C&B. (<u>See</u> Exs. 7 & 8). Cellino & Cellino is entering the Western New York legal community and indicated it is exclusively performing personal injury law in direct competition with C&B. <u>See id.</u>

**104.**   As mentioned previously, one cannot watch television in Western New York without seeing numerous advertisements regarding the Firm.

**105.**   C&B is a household name in Buffalo and virtually-synonymous with personal injury law. C&C is now trying to unfairly compete in and for that market.

4.    <u>Actual Consumer Confusion</u>

**106.**   It is inevitable that actual confusion will arise if C&C is allowed to proceed with performing business under, marketing, and advertising its confusingly similar name.

**107.** Indeed, upon information and belief, there is demonstrable actual confusion on behalf of clients and potential clients between Cellino & Cellino and Cellino & Barnes—and in fact, that confusion existed before C&C opened for business.

**108.** Upon information and belief, members of the public—including potential clients and consumers—already associate Cellino & Cellino with Cellino & Barnes and/or already are confused by the similarity between the two names.

> 5. <u>Cellino & Cellino was created in with the intention of capitalizing on Cellino & Barnes reputation and goodwill</u>

**109.** The totality of circumstances leading up to the formation of Cellino & Cellino shows Defendants' intent was to create confusion in the Western New York personal injury marketplace and capitalize off C&B's goodwill and reputation—C&C chose its name and chose not to build an independent brand for a reason.

**110.** In May 2017, someone sought to register www.CellinoandCellino.com *mere days before* Ross Cellino filed the Dissolution Proceeding.

**111.** When it became apparent that Ross Cellino's likelihood of success at dissolving C&B dwindled, the Dissolution Proceeding lingered, and there was a status quo order in place, the formation of C&C was announced as a soon-to-be, new personal injury law firm.

**112.** At about the same time C&C was formed as an LLC, the www.CellinoandCellino.com domain name was updated. (<u>See</u> Ex. 13).

**113.** Plaintiffs believe discovery will show that Ross Cellino was an active participant, if not the impetus or facilitator, for the formation of C&C, thereby demonstrating further bad-faith motives.

**114.** His conduct during the Dissolution Proceeding demonstrates that he was—and upon information and belief, is—intent on establishing a legacy "Cellino & Cellino" firm.

115.    Within hours of filing the Dissolution Proceeding, Mr. Cellino attempted a raid on Cellino & Barnes' personnel when he (a) sent a series of e-mails to C&B employees setting forth his plans to launch a new "Cellino & Cellino" firm[14] and (b) travelled to C&B's various offices to recruit its attorneys to Cellino & Cellino in person.

116.    The following examples further underscore Mr. Cellino's motivations, and explain the lengths he will go to create a legacy firm for his family:

a.      Immediately upon filing for dissolution, Mr. Cellino went on a raid of C&B offices and solicited C&B's attorneys and employees to join his future Cellino & Cellino firm;

b.      Mr. Cellino, despite his fiduciary duties, attempted to shut down all C&B advertising, which would have resulted in a steep decrease in client intake during the Dissolution Proceedings and would have crippled C&B;

c.      Mr. Cellino created advertisements for this new "Cellino & Cellino" firm with his daughter and grandchildren—despite the fact that C&B is still functioning, no determination has been made as to dissolution, and there exists a court Order in the Dissolution Proceeding preventing him from soliciting C&B employees—**focusing on the "Cellino family name"** and discussing leaving the firm's legacy to his grandchildren[15] (Ex. 36);

d.      Mr. Cellino created a "promotional video" to use to show existing C&B employees in an effort to convince them to join C&C (Ex. 36);

e.      Mr. Cellino continues to solicit other attorneys at C&B to join Cellino & Cellino by making statements to them such as "nobody calls a Harley Davidson 'a Davidson'";

---

[14]     Annexed hereto as **Exhibit 33** is a copy of an e-mail sent by Mr. Cellino on May 10, 2017, at 11:56 a.m.

Annexed hereto as **Exhibit 34** is a copy of an e-mail sent by Mr. Cellino on May 10, 2017, at 11:59 a.m.

Annexed hereto as **Exhibit 35** is a copy of an e-mail sent by Mr. Cellino on May 10, 2017, at 12:03 p.m.

[15]     Annexed hereto as **Exhibit 36** is a copy of pertinent portions of the Examination Before Trial of Ross M. Cellino, Jr., dated July 23 and 24, 2018.

    f.       Mr. Cellino created a website for "Cellino & Cellino"[16] (Exs. 36 & 37); and

    g.       Mr. Cellino illicitly solicited an employee of a major competitor of C&B to hack into C&B's website and steal proprietary information and transfer said information to his new "Cellino & Cellino" firm website (Ex. 37).

Mr. Cellino acted, and continues to act, in bad-faith in an effort to achieve the ulterior motive of co-opting C&B so that he may form his Cellino & Cellino "legacy firm."

117.    While Mr. Cellino now claims he has no involvement with C&C, and that he is 100% loyal to C&B, his conduct demonstrates: (a) he is anything but "uninvolved" in the formation and operation of Cellino & Cellino; and (b) his loyalty is **not** 100% committed to C&B.

118.    Although Mr. Cellino's conduct would further bolster C&B's case, it is not necessary to demonstrate C&C's infringement or unfair competition. Nonetheless, the link between Ross Cellino's conduct and C&C further demonstrates that C&C was formed with the express intent of capitalizing off the reputation and goodwill of Cellino & Barnes.

119.    For example, throughout his effort in creating Cellino & Cellino, Mr. Cellino put special emphasis on the "Cellino family name":

    a.       "The Cellino brand has been around for a long time and once I have the green light, I will tap into my personal cash and lines of credit to aggressively market the new firm on TV, radio, print, and billboards." (Ex. 33);

    b.       "I believe having the Cellino name front and center as it traditionally has been will allow an easier transition in the public's eye." (Ex. 33);

    c.       "[P]lease contact me so that I may have a fair opportunity to express why you should consider joining my future firm." (Ex. 34);

    d.       Explaining that he intends to rebrand "Cellino & Barnes to 'Cellino & ???'" (Ex. 35);

---

[16]    Annexed hereto as **Exhibit 37** is a copy of the affidavit of Darryl Kowalik, previously sworn to and filed during the Dissolution Proceeding, discussing Mr. Cellino's website and his solicitations to Mr. Kowalik regarding the same.

The "Cellino name" also happens to be the first name in the C&B brand, which Cellino & Barnes has gone to great expense to promote and turn into a nationwide brand.

120.     Importantly, Ross Cellino admitted, **under oath,** during a deposition in the Dissolution Proceeding, that he created (a) commercials for Cellino & Cellino, as well as (b) a promotional video for the admitted purpose of showing current C&B attorneys to convince them why they should join Cellino & Cellino. (Ex. 36).

121.     Upon information and belief, based on Mr. Cellino's sworn testimony, the above referenced videos for "Cellino & Cellino" include: (a) Mr. Cellino's family members, ***including*** the current attorney-members of C&C, and (b) an actual quote by Mr. Cellino stating: "***Cellino & Cellino, sound familiar? It should, it's the same firm.***" (Ex. 36, 45:6-46:18, 129:3-11, & 279:2-280:21 (emphasis added)).

122.     Cellino & Cellino is Mr. Cellino's brainchild; it is the firm he endeavored to create for over two years. He expressly and impliedly stated, on multiple occasions, his intent to capitalize on C&B's reputation and goodwill.

123.     One of the instances was in an e-mail Mr. Cellino sent to C&B personnel within moments after filing for dissolution, which expressly contains the following irrefutable evidence:

### 4) Rebranding Cellino & Barnes to Cellino & ???

The Cellino brand has been around for a long time and I will take advantage of my financial position to aggressively market the new firm name on TV, radio, print, and billboards. Marketing professionals have expressed to me that ***the big advantage I have in rebranding the firm name is simply that my name is first***. This may seem trivial but ***the experts have told me that this is a key factor to easily rebrand the firm nam***e.

To summarize, I want you to join my new law firm because it is clearly in your best interest for the following reasons:

- Changes in Management

- Marketing Innovation

- Financial Strength

- ***Ease of Brand Transition***.

(Ex. 35 (emphasis added)).

**124.** That the "Cellino & ???" firm now exists as "Cellino & Cellino" shows this is not of recent vintage.  It is the culmination of Mr. Cellino's two-year quest.

6.      The Quality of Cellino & Barnes services is exceptional and unique

**125.** As discussed previously, C&B performs exceptional legal services for its clients and has recovered over $2 billion in settlements for those clients. The amount of success and growth the firm has experienced is unparalleled.

**126.** In fact, Mr. Cellino admitted under oath that C&B has done very well for its clients. (Ex. 36 at pp. 6-7).

7.      Sophistication of the relevant consumer group

**127.** Upon information and belief, under the applicable law, courts have established that individuals in the need of representation in areas of criminal defense, personal injury, and divorce law are not always as savvy as business owners or other individuals who would be likely to know, understand, or appreciate the difference between C&B and C&C's law firms.

**128.** Upon information and belief, personal injury clientele will actually assume that by both using "Cellino" in their name that they are associated, thereby leading to further actual confusion.

**129.** Moreover, upon information and belief, because many personal injury clients are injured, have not been properly compensated, and are in need of immediate assistance, they are unlikely have the time or ability to discern the difference between a "Cellino & Barnes" law firm

and a "Cellino & Cellino" law firm. Many times, personal injury clients are attempting to obtain counsel in great haste and are not concerned with such easily confusing details.

## FUTILITY OF DEMAND AND STANDING

130.    On May 20, 2017, Mr. Cellino filed the Dissolution Proceedings and alleged that he and Mr. Barnes, as officers, shareholders, and directors of C&B, are "deadlocked" on all material issues such that the Firm cannot continue to operate and function. That alleged deadlock is an integral aspect of Mr. Cellino's application for dissolution.

131.    Plaintiff denies that any deadlock exists and contends that Mr. Cellino's allegations are definitively and demonstrably false.

132.    However, despite the absence of bona fide deadlock, Mr. Cellino remains insistent on gathering manufactured evidence to support his baseless claims. As such, seeking Mr. Cellino's consent to commence legal action against Cellino & Cellino would be futile.

133.    Moreover, Mr. Cellino has an inherent conflict of interest in the instant matter. This action seeks damages and injunctive relief against Cellino & Cellino—the law firm he has so ardently and vocally sought to open, to which he solicited current C&B personnel over the past two (2) years, and which was formed by, is operated by, and/or employs Mr. Cellino's family— including, but not limited to, his spouse and two daughters.

134.    Indeed, shortly after C&B wrote a letter regarding the formation of C&C in the Dissolution Proceeding, Mr. Cellino sent a heated e-mail to Mr. Barnes stating: "Good luck trying to derail my daughters and wife from starting [C&C]."

135.     Mr. Cellino sent another e-mail expressly stating he "does not consent to or authorize the initiation of any trademark infringement action against Cellino & Cellino, LLP." [17]

136.     Thus, any demand on Mr. Cellino to do so would be futile.

137.     The foregoing illegal, deceptive, misleading, and infringing conduct and activities by Defendant Cellino & Cellino caused harm to C&B's finances, business, clients, reputation, good will, interfered with the Dissolution Proceeding, and threatens additional future harm to C&B. As such, Mr. Barnes, as an equal 50% owner, officer, and director of C&B has standing pursuant to BCL § 656 to maintain this derivative action.

### FIRST CAUSE OF ACTION
*[Federal Trademark Infringement under 15 U.S.C. § 1114(a)]*

138.     Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

139.     Plaintiff owns valid and enforceable trademark rights in the C&B Marks.

140.     C&B's name is inherently distinctive as it pertains to its legal services.

141.     C&B's name has also acquired distinctiveness and secondary meaning.

142.     C&B's name is famous as it relates to personal injury legal services—especially in Western New York.

143.     The Cellino & Barnes and Cellino & Cellino names share the identical first term: Cellino, and convey the same commercial impression to the consuming public.

144.     The term "Cellino" is an integrally distinctive term and a necessary part of C&B's name and registered trademark.

145.     The Cellino & Cellino name is visually similar to the Cellino & Barnes name.

146.     The Cellino & Cellino name is aurally similar to the Cellino & Barnes name.

---

[17]     Annexed hereto as **Exhibit 37** is a copy of Mr. Cellino's e-mail, dated May 7, 2019.

**147.** The connotations of the Cellino & Cellino name and the Cellino & Barnes name are the same.

**148.** The commercial impressions of the Cellino & Cellino name and the Cellino & Barnes name are the same.

**149.** C&C's name so closely resembles C&B's name in appearance, sound, connotation, and commercial impression that the use of C&C's name in commerce in connection with personal injury legal services is likely to cause confusion, mistake, or an association in the minds of the public and prospective clients.

**150.** C&C's name so closely resembles C&B's name in appearance, sound, connotation, and commercial impression that the use of C&C's name in commerce in connection with personal injury legal services is likely lead the public and prospective clients to believe that C&C's services are those of C&B or are endorsed, sponsored, or otherwise affiliated or connected with C&B.

**151.** Upon information and belief, C&C is using and/or intends to use the domain name www.cellinoandcellino.com, or one substantially similar to the same and C&B's domain names.

**152.** Upon information and belief, C&C's domain name www.cellinoandcellino.com is substantially similar to C&B's domain name www.cellinoandbarnes.com.

**153.** Plaintiff has the exclusive right to use the C&B Marks in commerce in connection with the services recited in its trademark registrations and applications, including, without limitation, personal injury legal services and related services.

**154.** C&B and C&C offer the same legal services, i.e. personal injury legal services.

**155.** The similarity of the C&B and C&C services is likely to cause consumer confusion, mistake, or deception as to the affiliation, connection, or association of C&B with C&C, and/or as to the origin, sponsorship, or approval of C&C's services by C&B.

156.     Upon information and belief, C&C is the only other law firm that uses a name similar to C&B's name in connection with providing personal injury legal services.

157.     Upon information and belief, actual confusion exists between C&B and C&C as a result of C&C's marketing and advertising its name and domain name.

158.     Defendant, without Plaintiff's consent, used, will use, and intends to continue to use the Infringing Marks in connection with the sale, offering for sale, distribution, and/or advertising of identical legal services, which is likely to cause confusion or mistake or otherwise deceive consumers in violation of 15 U.S.C. § 1114(1)(a).

159.     As a result of Defendant's infringement, Plaintiff suffered and will continue to suffer damages, including lost sales, profits, and goodwill.

160.     Defendant's unauthorized use of the Infringing Marks, in violation of 15 U.S.C. § 1114, caused irreparable injury to Plaintiff's reputation and goodwill. Upon information and belief, unless restrained and enjoined, Defendant will continue to infringe on Plaintiff's C&B Marks. Plaintiff lacks a remedy at law adequate to redress the harm Defendant has caused and will continue to cause until their conduct is restrained.

161.     Defendants' actions are willful, intentional and constitutes and exceptional case.

162.     Plaintiff is entitled to judgment against Defendant on the First Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the LANHAM ACT, 15 U.S.C. §§ 1116 & 1117, together with prejudgment and post-judgment interest.

## SECOND CAUSE OF ACTION

[*Federal Unfair Competition and False Designation of Origin
under LANHAM ACT, 15 U.S.C. § 1125(a)*]

163.    Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

164.    Defendant's use in commerce of the Infringing Marks herein constitutes use of a false designation of origin and misleading description and representation of fact.

165.    Defendant's conduct as alleged herein is willful and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of C&C with C&B.

166.    Defendant's conduct as alleged herein is intended to and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation with Plaintiff.

167.    Plaintiff began using the C&B Marks in association with a personal injury law firm, providing legal services, long before Defendant commenced its use of the Infringing Marks in relation to identical services.

168.    Plaintiff dedicated substantial time, money, and effort in advertising, promoting, and popularizing the C&B Marks and preserving the goodwill associated with them.

169.    As a result of Plaintiff's efforts, the C&B Marks have come to be recognized nationally for personal injury legal services.

170.    Notwithstanding that Defendant was never authorized to use the C&B Marks, C&C continues to offer services identical to C&B's services under a deceptive and deliberately misleading and confusingly similar name.

171.    Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the LANHAM ACT, 15 U.S.C. § 1125(a).

172.     Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

173.     Plaintiff is entitled to judgment against Defendant on the Second Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the LANHAM ACT, 15 U.S.C. §§ 1116 & 1117, together with prejudgment and post-judgment interest.

## THIRD CAUSE OF ACTION
*[Federal Trademark Dilution under LANHAM ACT, 15 U.S.C. § 1125(c)(1)]*

174.     Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

175.     Plaintiff's C&B Marks are distinctive and are "famous marks" within the meaning of Section 43(c) of the LANHAM ACT, 15 U.S.C. § 1125(c).

176.     Plaintiff's C&B Marks became distinctive and famous prior to the Defendant's acts as alleged herein.

177.     Defendant's acts as alleged herein are likely to dilute, have diluted, and will— unless enjoined—continue to dilute the distinctive quality of the C&B Marks.

178.     Defendant's acts as alleged herein are likely to tarnish, have tarnished, and will— unless enjoined—continue to tarnish the C&B Marks by undermining and damaging the valuable goodwill associated therewith.

179.     Defendant's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the LANHAM ACT and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

**180.**     Plaintiff is entitled to judgment against Defendant on the Third Cause of Action granting among other relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the LANHAM ACT, 15 U.S.C. §§ 1116 & 1117, together with prejudgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
*[Cybersquatting under LANHAM ACT, 15 U.S.C. § 1125(d)]*

**181.**     Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

**182.**     Upon information and belief, Defendant willfully and deliberately registered the www.cellinoandcellino.com domain name, and/or domain names similar thereto and to the C&B Marks, with the bad faith intent to profit from Plaintiff's reputation, goodwill, and substantial investment in SEO and PPC performance.

**183.**     Upon information and belief, by using the designation "Cellino" in its domain name, Defendant intended to divert consumers and prospective clients looking for C&B's website to Defendant's website, where Defendant is selling, offering for sale, distributing, performing and/or advertising legal services identical to C&B's legal services.

**184.**     As a result of Defendant's cybersquatting as alleged herein, Plaintiff has suffered damages, including lost sales, profits, and goodwill.

**185.**     Defendant's acts of cybersquatting have caused irreparable injury to Plaintiff's brand, reputation, and goodwill. Upon information and belief, unless restrained and enjoined, Defendant will continue its acts of unfair competition.

**186.**     Plaintiff is entitled to judgment against Defendant on the Fourth Cause of Action granting among other relief, an award of actual damages, Defendant's profits, enhanced damages

and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the LANHAM ACT, 15 U.S.C. §§ 1116 & 1117, together with prejudgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
*[Trademark Infringement under N.Y. GEN. BUS. LAW § 360, et seq.]*

187.    Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

188.    Defendant's use of the Infringing Marks as described herein constitutes trademark infringement under both New York common and statutory law, including, without limitation, N.Y. GEN. BUS. LAW § 360-k and 360-o.

189.    Upon information and belief, Defendant's acts were done with knowledge of its violation of law and were done in bad faith and under circumstances where treble damages and attorneys' fees should be awarded to Plaintiff.

190.    Plaintiff is entitled to judgment against Defendant on the Fifth Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, treble damages, reasonable attorneys' fees and any other remedy provided under N.Y. GEN. BUS. LAW § 360-m and costs of the action together with prejudgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
*[Unfair Business Practices under N.Y. GEN. BUS. LAW § 349]*

191.    Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

192.    Defendant's use of the Infringing Marks to promote, market or sell services, including, upon information and belief, on Defendant's website, constitutes a deceptive act or practice in the conduct of Defendant's business, trade, or commerce and in the furnishing of services to consumers and therefore a violation of N.Y. GEN. BUS. LAW § 349 *et seq.*

193.     Defendant, through its unlawful conduct, is causing a likelihood of confusion as to the source, sponsorship, affiliation, connection, association, or approval of C&C by or with C&B.

194.     Plaintiff has been damaged by Defendant's acts complained of in an amount to be determined at trial, and if Defendant's conduct is allowed to continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

195.     Defendant's materially misleading practice of using the Infringing Marks to identify services provided by Defendant is likely to cause the consuming public at large to be misled as to the true source, sponsorship or affiliation of the services offered by Defendant and is likely to deceive the public and/or cause confusion or mistake to consumers.

196.     Plaintiff is entitled to judgment against Defendant on the Sixth Cause of Action granting monetary damages in an amount to be proven at trial and injunctive relief prohibiting Defendant from using the Infringing Marks or any other trade name, trademark, service mark or domain name that is identical or substantially similar to the C&B Marks, a mark that is otherwise likely to be confused with the C&B Marks or otherwise unfairly competing with Plaintiffs. Without preliminary and permanent injunctive relief, Plaintiff has no means by which to control the continuing injury to the reputation and goodwill associated with the C&B Marks. No amount of money damages can adequately compensate Plaintiff if it suffers damage to its reputation and associated goodwill through the false and unauthorized use by Defendant of the Infringing Marks.

## SEVENTH CAUSE OF ACTION

[*Injury to Business Reputation and Dilution under N.Y. GEN. BUS. LAW § 360-L*]

**197.** Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

**198.** By making unauthorized use in commerce of the Infringing Marks in connection with similar or identical services, Defendant's use of the Infringing Marks to identify C&C's services is likely to cause confusion, mistake, or deception as to the affiliation or connection of C&C with C&B and as to the sponsorship or approval of Defendant's services by Plaintiff.

**199.** Defendant's unauthorized use of a copy, variation, simulation, or colorable imitation of the C&B Marks and/or Plaintiff's trade name in connection with services not controlled or otherwise subject to C&B's quality control has caused dilution of the reputation of Plaintiff and its services.

**200.** Defendant's distributing, marketing, advertising, offering for sale, and actual sale of its services under the Infringing Marks causes confusion and mistake, deceives and misleads the purchasing public, trades upon Plaintiff's high-quality reputation and improperly misappropriates C&B's valuable good will to Defendant.

**201.** The aforesaid conduct by Defendant constitutes a likelihood of injury to the business reputation of Plaintiff in violation of N.Y. GEN. BUS. LAW § 360-L.

**202.** Plaintiff is entitled to judgment against Defendant on the Seventh Cause of Action in an amount to be determined at trial, and if Defendant's conduct is allowed to continue and is not enjoined, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, ongoing, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

## EIGHTH CAUSE OF ACTION
[*Use of Name with Intent to Deceive under N.Y. GEN. BUS. LAW § 133*]

**203.** Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

**204.** Defendant, with intent to deceive or mislead the public, has assumed and used as part of their corporate or trade name, for advertising and trade purposes Plaintiff's names, or simulation or part thereof, which may deceive or mislead the public as to the identity of the persons comprising of Defendant and its association with Plaintiff.

**205.** Plaintiff is entitled to judgment against Defendant on the Eighth Cause of Action in an amount to be determined at trial, and if Defendant's conduct is allowed to continue and is not enjoined, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, ongoing, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

## NINTH CAUSE OF ACTION
[*Common Law Trademark Infringement and Unfair Competition*]

**206.** Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

**207.** Plaintiff owns and uses the C&B Marks and enjoys common law rights in the State of New York and throughout the United States. Defendant's activities as stated herein constitute unfair competition and trademark infringement of Plaintiff's common law trademark rights in the C&B Marks.

**208.** Defendant's conduct alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, which will continue to both damage Plaintiff and confuse the public unless Defendant is enjoined by this Court. Plaintiff has no adequate remedy at law.

209.    Upon information and belief, Defendant's acts were done with knowledge of its violation of law and were done in bad faith.

210.    Plaintiff is entitled to judgment against Defendant on the Ninth Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, if applicable, reasonable attorneys' fees, if applicable, and costs of the action together with prejudgment and post-judgment interest.

## TENTH CAUSE OF ACTION
*[Common Law Dilution and Injury to Business Reputation]*

211.    Plaintiff repeats and realleges all prior allegations, as if fully set forth herein.

212.    The unlawful capitalization on and dilution of Plaintiff's distinctive trade name and trademark has caused direct and distinct harm to Plaintiff by injuring the goodwill and reputation of the C&B Marks.

213.    Plaintiff is entitled to judgment against Defendant on the Tenth Cause of Action granting among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, if applicable, reasonable attorneys' fees, if applicable, and costs of the action together with prejudgment and post-judgment interest.

**WHEREFORE**, Plaintiff Stephen E. Barnes, as a shareholder, director, and officer of and on behalf of Cellino & Barnes, P.C., hereby respectfully requests this Court to enter judgment against Defendant Cellino & Cellino, LLP as to all of Plaintiff's causes of action, and enter an Order:

1.    Granting an injunction preliminarily and permanently enjoining the Defendants, including Cellino & Cellino, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, as well as all those persons or entities in active concert and

participation with any of the foregoing, who receive actual notice of the Court's Order by personal service or otherwise, from:

a.  distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to distribute, provide, sell, market, advertise, or promote any services bearing the name "Cellino & Cellino", "Cellino and Cellino", and/or any mark that is a confusingly similar variation or colorable imitation of the C&B Marks;

b.  registering, operating, and/or otherwise utilizing domain names, including www.CellinoandCellino.com, www.CellinoLaw.com, and/or any domain name that is a confusingly similar variation or colorable imitation of the C&B Marks

c.  engaging in any activity that infringes Plaintiff's rights in the C&B Marks;

d.  engaging in any activity constituting unfair competition with Plaintiff;

e.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's C&B Marks;

f.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) the services provided by Defendant are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associates, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

g.  using or authorizing any third party to use in connection with any business or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, domain names, or trade dress that falsely associate such business and/or services with Plaintiff's or tend to do so;

h.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the C&B Marks or any other mark that infringes or is likely to be confused with the C&B Marks, or any of Plaintiff's services or Plaintiff as their source; and

i.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g) above;

2.      Ordering that Defendants account to Plaintiff for Defendants' profits and to pay any damages sustained by Plaintiff arising from the foregoing acts of unfair competition and unfair business practices;

3.      Ordering that Defendants account to Plaintiff for all cases Defendants retained and to pay any damages sustained by Plaintiff arising from the foregoing acts of unfair competition and unfair business practices;

4.      Awarding Plaintiff an amount up to three (3) times the amount of its actual damages, in accordance with Section 35(a) of the LANHAM ACT (15 U.S.C. § 1117(a));

5.      Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the LANHAM ACT (15 U.S.C. § 1117(a)) enhanced as appropriate to compensate Plaintiff for the damages caused thereby;

6.      Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any services sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's services;

7.      Declaring Plaintiff's case and Defendant's conduct to be an extraordinary case and awarding Plaintiff damages for willful infringement, including punitive damages, treble damages, and attorney's fees;

8.     Declaring that this is an exceptional case pursuant to Section 35(a) of the LANHAM ACT and awarding Plaintiff its costs and reasonable attorneys' fees under 15 U.S.C. § 1117(a);

9.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums; and

10.     Awarding such other and further relief as the Court deems just and proper.

Dated:  Buffalo, New York
        June 5, 2019

                        **DUKE HOLZMAN PHOTIADIS & GRESENS LLP**

                By:     /s/ *Gregory Photiadis*
                        _____
                        Gregory P. Photiadis
                        Christopher M. Berloth
                        *Attorneys for Plaintiff Stephen E. Barnes*
                        *as a shareholder, director, and officer of and on*
                        *behalf of Cellino & Barnes, P.C.*
                        701 Seneca Street, Suite 750
                        Buffalo, New York 14210
                        (716) 855-1111
                        gpp@dhpglaw.com
                        cberloth@dhpglaw.com

                **BARCLAY DAMON LLP**
                        Michael A. Oropallo
                        *Attorneys for Plaintiff Stephen E. Barnes*
                        *as a shareholder, director, and officer of and on*
                        *behalf of Cellino & Barnes, P.C.*
                        Barclay Damon Tower
                        125 East Jefferson Street
                        Syracuse, New York 13202
                        (315) 425-2831
                        moropallo@barclaydamon.com