UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEPHEN E. BARNES, as a shareholder,
directors, and officer of an on behalf of
CELLINO & BARNES, P.C.,

                  Plaintiff,

     v.                                     Case No. 1:19-cv-00729-EAW

CELLINO & CELLINO, LLP and
DOES 1 through 4, inclusive,

                  Defendants.

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY AND TO CANCEL ALL PRELIMINARY INJUNCTION PROCEEDINGS

**HODGSON RUSS LLP**
*Attorneys for Cellino & Cellino LLP*
Julia M. Hilliker
Robert J. Fluskey
Patrick J. Hines
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

Preliminary Statement ................................................................................................1

Argument ....................................................................................................................2

POINT I.        The Court should dismiss plaintiff's complaint .......................................2

    A.        Defendant's affidavit satisfies the *Already* test for mootness .................2

    B.        Plaintiff did not—and cannot—plead facts to support intellectual property
         rights in the "2020" suffix of a phone number or in a billboard design. .................3

    C.        Plaintiff's failure to comply with the *status quo* order in the dissolution
         proceeding is fatal to plaintiff's derivative action. ...................................4

POINT II.       The Court should cancel all temporary restraining order and preliminary
         injunction proceedings ............................................................................5

    A.        Plaintiff is not likely to succeed on the merits because he failed to offer
         any evidence that the "2020" suffix or billboard layout is subject to
         trademark protection. ...............................................................................6

    B.        Plaintiff is unlikely to succeed on the merits because it abandoned any
         alleged trademark interest in the "2020" suffix. ......................................7

    C.        Plaintiff is unlikely to succeed on the merits because it failed to offer any
         evidence of confusion based on the "2020" number, or defendant's
         billboard. ................................................................................................10

    D.        Plaintiff is unlikely to succeed on the merits because *Taylor* does not
         allow proscription against the use of "Cellino" apart from defendant's full
         name. ......................................................................................................12

Conclusion ...............................................................................................................14

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005).................................................................................8, 10

*Abraham Zion Corp. v. Lebow*,
    593 F. Supp. 551 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985)....................13

*AJB Enterprises, LLC v. Backjoy Orthotics, LLC*,
    No. 3:16-CV-00758 (VAB), 2016 WL 7341702 (D. Conn. Dec. 18, 2016) ...........4

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013).................................................................................................2, 3

*Cline v. 1-888-PLUMBING Group, Inc.*,
    146 F. Supp. 2d 351 (S.D.N.Y. 2001).......................................................................9

*Del-Rain Corp. v. Pelonis USA, Ltd.*,
    29 F. App'x 35 (2d Cir. 2002) ..................................................................................8

*In re Eilberg*,
    49 U.S.P.Q.2d 1955, 1998 WL 1015894 (Trademark Tr. & App. Bd. 1998) .........7

*Exxon Corp. v. Humble Expl. Co.*,
    695 F.2d 96 (5th Cir. 1983) ................................................................................8, 10

*Future Lawn, Inc. v. Maumee Bay Landscape Contractors, LLC*,
    542 F. Supp. 2d 769 (N.D. Ohio 2008)..............................................................11, 12

*Henri's Food Products Co., Inc. v. Kraft, Inc.*,
    717 F.2d 352 (7th Cir. 1983) ..................................................................................11

*ITC Ltd. v. Punchgini*,
    482 F.3d 135 (2d Cir. 2007).....................................................................................7

*Lemme v. Nat'l Broad. Co.*,
    472 F. Supp. 2d 433 (E.D.N.Y. 2007) .....................................................................6

*Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*,
    290 F. Supp. 3d 187 (W.D.N.Y. 2017) (Wolford, J.) ..............................................5

*Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp.*,
    No. CV-06-187-RGK, 2007 WL 1438114 (C.D. Cal. Feb. 23, 2007)..............13, 14

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Moore v. Consolidated Edison Co. of New York, Inc.*,
   409 F.3d 506 (2d Cir. 2005).............................................................................5, 9

*S.S. Krege Co. v. United Factory Outlet, Inc.*,
   598 F.2d 694 (1st Cir. 1979)................................................................................11

*Scott v. Mego Intern., Inc.*,
   519 F. Supp. 1118 (D. Minn. 1981) (6%)............................................................11

*Silverman v. CBS Inc.*,
   870 F.2d 40 (2d Cir. 1989)....................................................................................8

*Tartell v. South Florida Sinus and Allergy Center, Inc.*,
   790 F.3d 1253 (11th Cir. 2015) ....................................................................13, 14

*Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*,
   569 F.2d 731 (2d Cir. 1978)...........................................................................12, 13

*The Sports Authority, Inc. v. Prime Hospitality Corp.*,
   89 F.3d 955 (2d Cir. 1996).................................................................................10

*Tillery v. Leonard & Sciolla, LLP*,
   437 F. Supp. 2d 312 (E.D. Pa. 2006) ...........................................................13, 14

**Federal Statutes**

15 U.S.C. § 1057...................................................................................................6

15 U.S.C. § 1127...................................................................................................7

**State Statutes**

Business Corporation Law § 626............................................................................5

**Rules**

Federal Rules of Civil Procedure Rule 23.1 .........................................................5

## **PRELIMINARY STATEMENT**

Plaintiff's response to defendant's motion is not an opposition.  His response is a pivot—

an attempt to pursue a new, meritless case that he has not pleaded, let alone proved.

Plaintiff moved for a preliminary injunction against defendant to restrain defendant's use

of the name "Cellino & Cellino"[1] based on that name's purported likelihood of confusion with

"Cellino & Barnes."[2]  Plaintiff characterized the crux of his case as a naming dispute:

"Defendant has a choice.  It can open a law firm without adopting an infringing and confusingly

similar name."[3]

While not required to do so by law, defendant changed its name and its phone number

and created new advertising that features the new firm name, the new phone number, and

pictures of the female attorneys working with the firm.  Clearly, there can be no confusion with

Cellino & Barnes.  But rather than withdraw the case as moot, plaintiff now presses new,

unsubstantiated theories.  Specifically, plaintiff implausibly contends that he holds intellectual

property rights in the phone digits "2020" and that, as a result, defendant cannot use the phone

numbers 259-2020 and 333-2020, or use a billboard that references the surname of its attorneys.

---

[1]     Memorandum of Law in Support of Plaintiff's Motion, Dkt. 18 ("Pl. Memo"), at 2 ("Thus, Defendant should be at least preliminarily enjoined from using 'Cellino & Cellino.'").

[2]     *Id.* at 4 ("Cellino & Barnes contends that Cellino & Cellino did not choose its name to differentiate itself among local or regional law firms, but to confuse the consuming public into believing that it is the same firm as, or affiliated with, Cellino & Barnes— thereby capitalizing off of C&B's long-standing goodwill and enormous success."); *id.* at 5 ("[A]ny loss of customers as a result of the confusingly similar Cellino & Cellino and Cellino & Barnes names, would be difficult, if not impossible, to measure.")

[3]     *Id.* at 22; *see also* Compl. (Dkt. 8) at ¶ 27 ("Upon information and belief, C&C can name its law firm in a way that is not confusingly similar to and does not infringe upon the C&B brand ….[.]").

In plaintiff's application for a TRO and preliminary injunction, the motion and supporting "evidence" was directed to the name "Cellino & Barnes, the firm's jingle, and the principal telephone numbers used by the firm (888-8888 and 800-888-8888)."[4]  Plaintiff's motion marshalled no evidence or argument concerning the digits "2020" in a phone number or the design of any billboard.  Indeed, in his Complaint, plaintiff does not allege trademark rights in the digits "2020."  Even if plaintiff did plead, and once hold, a trademark in "2020," he long ago abandoned those trademark rights by failing to use the purported mark as a designation of origin in commerce.  Plaintiff similarly failed to plead any facts, or provide any evidence, supporting intellectual property rights in a billboard.

Plaintiff has not pleaded claims that support his new theories.  He certainly has not provided evidence showing likelihood of success on these new theories.  Accordingly, the Court should dismiss plaintiff's Complaint as moot.  At the very least, the Court should deny plaintiff's preliminary injunction motion and cancel all preliminary injunction proceedings.

## ARGUMENT

POINT I.     THE COURT SHOULD
             DISMISS PLAINTIFF'S COMPLAINT

A.     **Defendant's affidavit satisfies the *Already* test for mootness.**

In *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), the Supreme Court recognized that voluntary cessation of alleged wrongful conduct eliminates the existence of a valid "case or controversy," and thus moots the proceedings.  *Id.* at 93.  In that case, Already counterclaimed for cancelation of Nike's shoe trademark.  Nike issued a unilateral "covenant not to sue," which promised to never again enforce the allegedly invalid mark.  The court held that the unilateral

---

[4]     Pl. Memo at 11.

covenant was sufficiently binding to meet the burden to show that the wrongful behavior would not recur. *Id.*

Similarly here, defendant submitted an affidavit to the Court in which she affirmed that she would implement and maintain the changes that resolve the trademark issues before this Court until the conclusion of the Cellino & Barnes Dissolution Proceeding. *See* Declaration of Anna Marie Cellino, Dkt. 24-2, ¶ 18. This affidavit serves the same function as the covenant not to sue in *Already*: assurance that the alleged wrongful conduct cannot be expected to recur.

**B.  Plaintiff did not—and cannot—plead facts to support intellectual property rights in the "2020" suffix of a phone number or in a billboard design.**

Plaintiff claims that a live controversy still exists because, even though defendant has ceased all of the allegedly infringing conduct alleged in Barnes's Complaint—*i.e.*, using the name Cellino & Cellino and a phone number starting with "888"—defendant continues to use a phone number ending in "2020." With this new argument, Plaintiff faces a fundamental problem: In his Complaint, plaintiff does not even attempt to plead trademark rights in the "2020" suffix. He could not do so in good faith. Rather, plaintiff's Complaint asserts trademark protection only in "888-8888" and "(800) 888-8888." Compl. ¶¶ 3, 74. There is nothing in plaintiff's opening brief discussing an alleged "2020" mark. Yet in his opposition/reply papers, plaintiff claims—for the first time and without citation—that he owns intellectual property in the numbers 854-2020, 454-2020, and 621-2020.[5] And he takes issue with the alleged similarity of defendant's new phone numbers: 259-2020 and 333-2020.

Similarly, plaintiff claims that the design of defendant's new billboard infringes on rights not pleaded. Plaintiff's opposition argues anew that the appearance of the word "Cellino" on a

---

[5]     Plaintiff's Memorandum of Law in Further Support of Plaintiff's Motion, Dkt. 27-5 ("Pl. Reply Memo"), at 17.

billboard, despite the billboard also containing the full name of defendant's firm, infringes its marks.  But the Complaint pleads no facts supporting intellectual property rights in the name Cellino on a billboard, or in the general design or layout of a billboard.  *See AJB Enterprises, LLC v. Backjoy Orthotics, LLC*, No. 3:16-CV-00758 (VAB), 2016 WL 7341702, at *3-*4 (D. Conn. Dec. 18, 2016) (dismissing trade dress claim because plaintiff failed to identify in the complaint what elements of [Billboard] are distinctive and how they are distinctive, and refusing to consider the new factual allegations in the memorandum in opposition).

Defendant should not be forced to contend with ever-shifting goalposts.  While defendant continues to dispute the merits of plaintiff's claims, defendant changed its name and marketing to avoid burdening the Court and the parties with protracted litigation.  Defendant has voluntarily ceased any allegedly infringing conduct, *i.e.*, use of the Cellino & Cellino name and the "888" prefix.  The claims that were actually pleaded in plaintiff's Complaint are moot.

## C. Plaintiff's failure to comply with the *status quo* order in the dissolution proceeding is fatal to plaintiff's derivative action.

Plaintiff was required to obtain permission from State Court to maintain this derivative action.  Through its *Status Quo* Orders in the Dissolution Proceeding, the State Court stepped into the shoes of Cellino & Barnes in 2017, and assumed decision-making power.  *See* Hilliker Decl. (Dkt. 24-6), ¶¶ 6-9 and Exs. 3-4 (Dkt. 24-9 and 24-10).  The Order specifically requires that either party must seek recourse with the Court before varying from day-to-day handling of the business, and prohibits unilateral action.  By failing to apply to State Court for permission to proceed with this derivative action, plaintiff failed to meet the requirements of Business Corporation Law § 626 and Rule 23.1 of the Federal Rules of Civil Procedure.

Plaintiff suggests, without a single legal citation, that defendant lacks standing to raise this argument because it is not a party to the Dissolution Proceeding.  That argument

fundamentally misunderstands BCL § 626 and Rule 23.1.  The pleading requirements of those

rules concern *plaintiff's* standing to bring this action, not defendant's.  By challenging plaintiff's

compliance, defendant is challenging Mr. Barnes's right to bring the claims asserted on behalf of

Cellino & Barnes.  Under Mr. Barnes's incorrect interpretation of these rules, any shareholder in

a corporation could file derivative lawsuits on the corporation's behalf, without advising the

board of directors, so long as the defendant is not also a shareholder.

Plaintiff also asserts that he complied with the *Status Quo* Orders by suggesting to Justice

Chimes that he intended to file this action.  But Justice Chimes specifically declined to opine on

plaintiff's suggestion.  Declaration of Vincent Doyle, dated July 26, 2019, at ¶ 11.  Plaintiff

failed to seek—let alone obtain—Justice Chimes's permission to file derivative claims in this

Court.

**POINT II.    THE COURT SHOULD CANCEL ALL TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PROCEEDINGS**

Preliminary injunctive relief requires a "clear showing" of, among other things,

likelihood of success on the merits.  *See Moore v. Consolidated Edison Co. of New York, Inc.*,

409 F.3d 506, 511 (2d Cir. 2005); *see also Marshall v. New York State Pub. High Sch. Athletic

Ass'n, Inc.*, 290 F. Supp. 3d 187, 206 (W.D.N.Y. 2017) (Wolford, J.) (recognizing that when an

injunction alters the *status quo*, "the moving party must show a clear or substantial likelihood of

success") (internal quotations omitted).

Here, plaintiff opposes defendant's motion to cancel the TRO and preliminary injunction

proceedings by claiming that the use of a "2020" suffix, and the layout of defendant's new

billboards, infringes his alleged intellectual property rights.  Plaintiff has presented no evidence

to support likelihood of success on these new theories.

5

A.      **Plaintiff is not likely to succeed on the merits because he failed to offer any evidence that the "2020" suffix or billboard layout is subject to trademark protection.**

As explained above, plaintiff failed to plead any intellectual property rights in the digits "2020" or in the layout of a billboard.  But even if he had pleaded such claims, to establish likelihood of success on the merits, plaintiff must proffer clear evidence that the "2020" suffix and the billboard layout are subject to trademark protection.  The burden of establishing trademark status lies with the party seeking protection of the mark.  *Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 440 (E.D.N.Y. 2007) ("To prevail on a claim of trademark infringement, a plaintiff must show that [he] '***has a valid mark*** entitled to protection under the Lanham Act' and that defendant's use of that mark is likely to cause confusion.")  (quotation omitted, emphasis added).  Plaintiff has offered no evidence to demonstrate that the phone number suffix "2020," or the general layout of plaintiff's billboards, are protectable as trademarks.

Plaintiff owns no registered trademark in a "2020" suffix.[6]  Thus, there is no *prima facie* evidence of a "2020" mark.  *See* 15 U.S.C. § 1057.  To establish a common-law trademark, plaintiff must allege and prove that "2020" is more than just informational, and has acquired distinctiveness as a designation of the source of legal services, which he failed to do.  *See In re Eilberg*, 49 U.S.P.Q.2d 1955, 1998 WL 1015894 (Trademark Tr. & App. Bd. 1998).  Plaintiff only submits a self-serving affidavit in which he baldly asserts that individuals continue to associate "2020" with Cellino & Barnes,[7] and that plaintiff used billboards as part of its

---

[6]      Declaration of Julia Hilliker, dated July 26, 2019 ("Hilliker Reply Dec."), Ex. 1.

[7]      Declaration of Stephen E. Barnes, Dkt. 27-1 ("Barnes Dec.") at ¶ 8.

marketing.[8]  There is simply no evidence of acquired distinctiveness in either the "2020" number or the billboard.

**B.    Plaintiff is unlikely to succeed on the merits because
it abandoned any alleged trademark interest in the "2020" suffix.**

Even if plaintiff once held intellectual property rights in a "2020" suffix, the last time plaintiff could have used a "2020" suffix as a mark was six years ago.  At that point, plaintiff stopped advertising its "former number" in favor of the 888-8888 number, which it determined would be better for promotional purposes.  Compl. ¶ 29; Barnes Dec. ¶¶ 5, 9.  By abandoning marketing and advertising of the number, plaintiff lost its intellectual property (if any) in that number, and is therefore unlikely to succeed on the merits of any claim relying on that number.

"The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark."  *ITC Ltd. v. Punchgini*, 482 F.3d 135, 146 (2d Cir. 2007).  Abandonment occurs based on two factors: (1) non-use of the mark by the legal owner; and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future.  *Id*. at 147 (citing 15 U.S.C. § 1127).  The Lanham Act provides that three years of nonuse is *prima facie* evidence of abandonment.  *Id.*

Plaintiff ceased using the "2020" suffix, within the meaning of the Lanham Act, when, "approximately six years ago," he "began advertising" the 888-8888 number instead of a "2020" suffix.  Barnes Dec., ¶ 5.  Even in his own Complaint, plaintiff describes "854-2020" as the firm's "former number."  Compl. ¶ 29.

Anticipating this issue, plaintiff asserts in his declaration that he still "uses" the 2020 suffix.  Barnes Dec., ¶ 6.  By "use," plaintiff means that the number remains operable.  But this

---

[8]      *Id.* at ¶¶ 12-13.

argument "misconceives the meaning of 'use' under the Lanham Act. The Act does not protect *any* use; nor is the quantity of *ostensible* use—here, the number of [calls]—necessarily relevant." *Del-Rain Corp. v. Pelonis USA, Ltd.*, 29 F. App'x 35, 38 (2d Cir. 2002) (first emphasis in original). And Plaintiff's use of a telephone number in a "pure machine-linking function …was not use under the Lanham Act." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (holding that the defendant's non-promotional use of a URL was not Lanham Act use) (internal quotations omitted). Instead, the inquiry centers on use of the number ***as a mark***— use that promotes "the public's identification of the mark with the proprietor, which is the essential condition for trademark protection." *Silverman v. CBS Inc.*, 870 F.2d 40, 48 (2d Cir. 1989); *see also Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 100 (5th Cir. 1983) (holding that Exxon abandoned the HUMBLE trademark despite occasional sale of HUMBLE products because "the HUMBLE mark did not with these sales play the role of a mark"). Nonpromotional "use" is insufficient to avoid abandonment. *Id.* The United States Patent and Trademark Office agrees.[9]

Plaintiff abandoned all use of the "2020" suffix as a mark when it ceased using the number in marketing and advertising, and instead re-branded the firm with the 888-8888 ("Don't Wait. Call Eight.") campaign. This is readily apparent from archived versions of plaintiff's website, www.cellinoandbarnes.com. As of September 2, 2013, the website prominently displayed a 2020 number in the upper right-hand corner. But the following day, Plaintiff began advertising using its *new* 888 number, which replaced the 2020 number in the upper right-hand corner. By July 13, 2014, the 2020 number was no longer visible anywhere on the page, which

---

[9]      *See* Hilliker Reply Dec., Ex. 3.

continued to be true in July 2019.[10]  These dates roughly align with Mr. Barnes's own allegations

that plaintiff began advertising using its new number "approximately six years ago."  Barnes

Dec., ¶ 5.

To the extent that the 2020 suffix was ever a mark, its protectable status was derived

from the sort of prominent display and promotional use that ceased in September 2013.  There

was a deliberate decision six years ago to stop promoting the "2020" number in connection with

plaintiff's identity, which is apparent from Mr. Barnes's Declaration.  He describes the

promotional use of the "2020" numbers in the past tense:  "advertised" ¶ 5, "were so widely

advertised" ¶ 8, "We spent scores-of-millions of dollars . . . creating a brand … that *was*

recognized[.]"  ¶ 9 (emphasis added).

"Promotional" use of a number is necessary for it to be used as a trademark.  For

example, in a case addressing the use of a "1-800-PLUMBING" number, the Southern District of

New York rejected a defense of abandonment because the plaintiff performed services under the

disputed number, and continued actively promoting her business with that number by "affixing

the mark to her truck, distributing flyers and business cards at events, and advertising on local

radio and in newspapers."  *Cline v. 1-888-PLUMBING Group, Inc.*, 146 F. Supp. 2d 351, 359

(S.D.N.Y. 2001).  The last time Plaintiff purports to have used the 2020 numbers in this fashion

was in September 2013, almost twice as long as necessary to establish abandonment.  Plaintiff's

current use of the 2020 numbers is in a "pure machine-linking" function, which is insufficient to

preserve any mark.  *1-800 Contacts*, 414 F.3d at 407.

Plaintiff states that he continued using the "2020" numbers because of the amount of

goodwill associated with those numbers from past promotion.  Barnes Dec., ¶¶ 9-11.  But to

---

[10]     *See* Hilliker Reply Dec., Ex. 2.

preclude a finding of abandonment, plaintiff was required to demonstrate that he intended to resume use of *the mark* in the future, and not merely use the suffix as part of an operable phone number. *See Exxon Corp.*, 695 F.2d at 100. There is no basis for that conclusion, and it is affirmatively refuted by Mr. Barnes's own admission that plaintiff "believed the future would be stronger by marketing the 888-8888 numbers." Barnes Dec., ¶ 9.

C.     **Plaintiff is unlikely to succeed on the merits because it failed to offer any evidence of confusion based on the "2020" number, or defendant's billboard.**

The burden to establish the likelihood of confusion lies with plaintiff. *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). Plaintiff claims there is a likelihood of confusion between his abandoned "854-2020" number, and defendant's new phone numbers, which end in "2020." But he presents no evidence in support of that conclusion. Plaintiff offers only his own declaration, in which he recites anecdotal hearsay about the "good will" associated with the 854-2020 number. And he claims that Cellino & Barnes continues to receive calls at the 854-2020 number.[11] But that is not evidence of confusion. If anything, it weighs against confusion.

The survey evidence submitted in support of plaintiff's motion, which asserts that 7% of those surveyed believed that Cellino & Cellino's number is 854-2020,[12] is insufficient evidence to establish a likelihood of confusion concerning the "2020" number for two reasons. First, it does not show confusion about the "2020" number. Plaintiff proffered the survey to show that there is confusion between plaintiff's and defendant's *names*, because participants allegedly equate "Cellino & Cellino" with "Cellino & Barnes." But that does not suggest any confusion

---

[11]     Barnes Dec., ¶ 10.

[12]     Bachwitz Dec., Ex. 3 (Dkt. 4-17).

that 854-2020 is the number for Cellino & Barnes, and the survey did not address defendant's

new phone numbers at all.   Second, 7% is far below the standard necessary to show "clear"

likelihood of confusion sufficient to obtain an injunction.   *See Henri's Food Products Co., Inc. v.*

*Kraft, Inc.*, 717 F.2d 352, 358 (7th Cir. 1983) (7.6% confusion rate weighed against

infringement); *S.S. Krege Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 697 (1st Cir. 1979)

(7.2%); *Scott v. Mego Intern., Inc.*, 519 F. Supp. 1118, 1130 n. 11 (D. Minn. 1981) (6%).   A

higher percentage of participants, 8%, believed the correct phone number was "444-4444,"

which is the number for William Mattar's office.[13]   And an equal amount, 7%, believed the

number was "844-4444" or something else.[14]

Plaintiff relies on *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, LLC*, 542

F. Supp. 2d 769 (N.D. Ohio 2008), to suggest that common use of the "2020" suffix is sufficient

similarity to establish likelihood of confusion.   But that reliance is misplaced.   In *Future Lawn*,

the dispute was over the use of the word "TURF" as an alphanumeric suffix to a phone number,

not a simple numeric suffix.   The court specifically noted that "[w]ords are easier to recall than

numbers[,]" and substituting words in place of numbers carries special significance in

consumers' minds.   *Id.* at 777-78.   Here, there is no word substitution, and plaintiff offers no

reason to conclude that mere use of "2020" establishes a likelihood of confusion.

Finally, plaintiff claims there is likelihood of confusion between plaintiff's billboards and

defendant's new billboards.   Even if plaintiff had pleaded facts to support this contention (he did

not), his argument still fails for multiple reasons.   First, plaintiff's initial motion could not have

presented any evidence of confusion between his billboards and defendant's new billboards,

---

[13]      *Id.* at page 2.

[14]      *Id.*

because defendant's new billboards did not exist until after plaintiff filed his motion.  Second, plaintiff's opposition to defendant's motion did not proffer any evidence showing likelihood of confusion between the parties' billboards.  The only material plaintiff submitted on that point was a comparison of the two billboards side by side, along with Mr. Barnes's assertion that he believes they are similar.[15]  Plaintiff's own beliefs are not evidence, and fall far short of the burden to show a "clear or substantial likelihood of success" on that theory.

**D.      Plaintiff is unlikely to succeed on the merits because *Taylor* does not allow proscription against the use of "Cellino" apart from defendant's full name.**

Relying on *Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir. 1978), plaintiff takes issue with defendant's use of "Call Cellino" on defendant's new billboards, with "Law Offices of Anna Marie Cellino" featured at the bottom of the billboard.  *Taylor* is inapposite.  There are important factual distinctions in *Taylor* that plaintiff ignores.

The *Taylor* defendant, "Bully Hill," was owned by the grandson of the defendant's founder.  However, the grandson did not inherit the company.  In fact, the grandfather formed a partnership whose assets were sold to the plaintiff company, including any trademark in the name "Taylor."  The vineyard was sold to strangers, and later bought back by the grandson. *Taylor Wine*, 569 F.2d at 733.  The court specifically noted that "a sweeping injunction" is more "tolerable" when an alleged infringer previously sold its business and goodwill to the plaintiff. *Id.* at 735.  But when "the second comer owns the company himself and evinces a genuine interest in establishing an enterprise in which his own skill or knowledge can be made known to the public, that argues in favor of allowing him to use his own name in some restricted fashion." *Id.*  Thus, the court's injunction was limited to precluding use of a name, mark, or advertisement

---

[15]      Barnes Dec., ¶¶ 12-13.

suggesting that the defendant was a "successor" of the plaintiff corporation.  But it allowed the defendant to "show Walter's personal connection with Bully Hill," and use his signature on labels and advertisement.  *Id.* at 736.

Defendant here is a firm of attorneys with genuine interest in practicing their trade. Unlike *Taylor*, defendant never sold its business or goodwill to plaintiff.[16]  An injunction against associating with the "Cellino" name, except as part of a full statement of the firm's name, would be too broad.  Moreover, the billboard at issue actually uses "Call Cellino" along with a full statement of the firm's name, "Law Offices of Anna Marie Cellino," and photographs of the female attorneys who work with the firm.  That is no different than using a signature and otherwise suggesting a personal connection of individuals to the firm, which was permitted in *Taylor*.

Plaintiff also attempts to distinguish the *Tillery*, *Tartell*, and *Milbank* cases because the marks at issue in those cases had not acquired secondary meaning.  But plaintiff's discussion ignores the ***new issue*** it has presented to the Court in its reply: Does plaintiff's "Cellino & Barnes" mark protect against any use of the simple surname "Cellino" on a billboard, alongside defendant's new name, "Law Offices of Anna Marie Cellino," and photographs of female attorneys?

The *Tillery*, *Tartell*, and *Milbank* courts held that the plaintiffs were not entitled to trademark protection for a simple surname.  In *Tillery*, the Court held that the plaintiff had failed to meet the "vigorous evidentiary requirements" to prove that his individual name had "become synonymous in the public mind" with the business, and "submerge[d] the primary meaning of

---

[16]     *See Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 567 (S.D.N.Y. 1984) (distinguishing *Taylor* because "[t]his is not a case where the alleged infringer has previously sold his business to the plaintiff."), aff'd, 761 F.2d 93 (2d Cir. 1985).

the name as a word identifying a person, in favor of its meaning as a work identifying a business." *Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312, 321 (E.D. Pa. 2006). The court in *Tartell* reached the same conclusion. *Tartell v. South Florida Sinus and Allergy Center, Inc.*, 790 F.3d 1253, 1258-59 (11th Cir. 2015). And in *Milbank*, the court concluded that the plaintiff failed to prove a secondary meaning for "Milbank" as opposed to its full name "Milbank Tweed Handley & McCloy LLP." *Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp.*, No. CV-06-187-RGK (JTLx), 2007 WL 1438114 (C.D. Cal. Feb. 23, 2007).

Here, plaintiff has conceded that defendant may use its new name, "Law Offices of Anna Marie Cellino." Plaintiff's evidence focuses entirely on the strength of its "Cellino & Barnes" mark, and whether there might be confusion with defendant's former "Cellino & Cellino" name. That evidence is now irrelevant, and it does not address protection of the simple surname "Cellino." Plaintiff's survey results arise from questions concerning "Cellino & Cellino," not "Cellino."[17] Plaintiff neither pleaded facts nor submitted evidence which addressed whether the name "Cellino," by itself, can be used on a billboard alongside defendant's full name.

## CONCLUSION

For the reasons discussed above, and in the accompanying declarations, the Court should deny plaintiff's motion for a temporary restraining order and preliminary injunction and dismiss this action in its entirety. In the alternative to dismissal, the Court should stay this action pending resolution of the Cellino & Barnes dissolution proceeding.

---

[17]    Bachwitz Dec., Ex. 3 (Dkt. 4-17).

Dated:  July 26, 2019

**HODGSON RUSS LLP**
*Attorneys for Cellino & Cellino LLP*


By:  s/Julia M. Hilliker
      Julia M. Hilliker
      Robert J. Fluskey
      Patrick J. Hines
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

089931.00000 Business 18648895v3