UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

STEPHEN E. BARNES, *as a shareholder,
director, and officer of and on behalf of
Cellino & Barnes, P.C.*,

                    Plaintiff,

      v.

CELLINO & CELLINO, LLP, and DOES 1
through 4, *inclusive*,

                    Defendants.

—————————————————————————

**DECISION AND ORDER**

1:19-CV-00729 EAW

## INTRODUCTION

Plaintiff Stephen E. Barnes ("Barnes") commenced this derivative action on behalf of Cellino & Barnes, P.C. ("C&B") on June 5, 2019, alleging claims of trademark infringement, unfair competition, and dilution, pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.,* the New York General Business Law, and/or New York State common law. (Dkt. 1). Barnes further filed a motion for a temporary restraining order and a preliminary injunction. (Dkt. 4). In response, Defendant Cellino & Cellino, LLP ("C&C") has filed a motion to cancel all preliminary injunction proceedings and to dismiss the case or, in the alternative, to stay. (Dkt. 24). For the reasons discussed below, the Court grants C&C's motion to dismiss on the grounds that Barnes has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 23.1. The dismissal is without prejudice.

- 1 -

## FACTUAL BACKGROUND[1]

C&B is a personal injury law firm in which Barnes and non-party Ross Cellino have been partners or co-owners since 1992.[2]  (Dkt. 8 at ¶ 8).  C&B owns several registered trademarks, including "Cellino & Barnes," "Cellino and Barnes," "888-8888," and "(800)888-8888."  (*Id.* at ¶ 3).  Barnes further claims that C&B has "cultivated and used common law marks," which include "(a) billboards featuring the names and likenesses of Messrs. Barnes and Cellino; (b) a website with a distinctive look and feel; (c) marketing materials in print, audio, and electronic form; and (d) an extensive open-air advertising campaign involving billboards and other publicly posted materials."  (*Id.* at ¶ 4).  C&B has invested over $150 million into advertising and marketing and has experienced significant success in the marketplace.  (*Id.* at ¶¶ 56-69).

In May 2017, Ross Cellino commenced a special proceeding in New York State Supreme Court, Erie County pursuant to New York Business Corporation Law ("BCL") § 1104, seeking the dissolution of C&B.  (*Id.* at ¶ 15).  This matter is still pending, and is captioned *Cellino v. Cellino & Barnes, P.C., et al.*, Erie County Index No. 806178/2017 (the "Dissolution Proceeding").  (*Id.* at ¶¶ 15-16).  The Honorable Deborah A. Chimes, New York State Supreme Court Justice, is presiding over the Dissolution Proceeding.  (*See*

---

[1]    The following facts are taken from the Complaint and from the parties' papers submitted in support of and in opposition to the motion for a preliminary injunction.  For purposes of C&C's motion to dismiss, the Court has treated all of Barnes' allegations as true.

[2]    Because this matter involves several people with the last name "Cellino," the Court has referred to them by their full names throughout this Decision and Order.

Dkt. 24-10 at 2). Two so-called "status quo orders" have been entered by Justice Chimes in the Dissolution Proceeding, barring both Barnes and Ross Cellino from "chang[ing] the status quo" as it relates to the operating of C&B without first petitioning the court. (Dkt. 24-10; *see also* Dkt. 24-9).

On or about April 24, 2019, Anna Marie Cellino, Jeanna Cellino, and Annmarie Cellino (collectively the "C&C Attorneys") formed C&C. (Dkt. 24-2 at ¶ 6). Anna Marie Cellino is Ross Cellino's wife, and Jeanna and Annmarie Cellino are their daughters. (*Id.* at ¶¶ 3, 5, 8). C&C thereafter began advertising its services, including by placing billboards with the name "Cellino" in large letters and the phone number "888-2020." (*See, e.g.,* Dkt. 4-13 at 2).

The parties vigorously dispute whether Ross Cellino was involved with the formation of C&C. Barnes asserts that Ross Cellino is "intimately and integrally involved with this new Cellino & Cellino firm" (Dkt. 8 at ¶ 22), while Anna Marie Cellino has submitted a sworn declaration stating that Ross Cellino is not an attorney with C&C (Dkt. 24-2 at ¶ 8).

After the filing of the instant lawsuit, the C&C Attorneys decided to "reconstitute [their] firm under the name of 'The Law Offices of Anna Marie Cellino LLP'" (the "AMC Firm"). (Dkt. 24-1 at ¶ 11). The C&C Attorneys voluntarily made the following additional changes: (1) marketing of the phone number "888-2020" was discontinued, and the AMC Firm now uses the phone numbers (716) 259-2020 or (716) 333-2020; (2) radio campaign ads for C&C were pulled; (3) the billboard design was changed to reflect the new name and phone number of the AMC Firm, as well as to feature photographs of Jeanna Cellino

and Annmarie Cellino; and (4) the AMC Firm's website, www.CellinoLaw.com, will feature the name "The Law Offices of Anna Marie Cellino LLP" and photographs of Jeanna Cellino and Annmarie Cellino. (*Id.* at ¶¶ 12-16). Anna Marie Cellino states in her declaration that she will "agree not to use the name Cellino & Cellino LLP" until a "dispositive decision" is entered in the Dissolution Proceeding. (*Id.* at ¶ 18).

## PROCEDURAL BACKGROUND

Barnes commenced the instant action on June 5, 2019. (Dkt. 1). Barnes concurrently filed his motion for a temporary restraining order and a preliminary injunction. (Dkt. 4). Barnes further asked the Court for an expedited hearing. (Dkt. 5).

The Court held a status conference on June 7, 2019, and set a hearing on the motion for a temporary restraining order for July 2, 2019. (Dkt. 17). The Court further scheduled an evidentiary hearing on Barnes' motion for a preliminary injunction to begin on August 1, 2019. (*Id.*).

On June 21, 2019, C&C filed a motion to cancel all preliminary injunction proceedings and to dismiss the case or, in the alternative, to stay the matter pending resolution of the Dissolution Proceeding. (Dkt. 24). C&C's filing also served as its opposition to the motion for a temporary restraining order and a preliminary injunction. (*Id.*). Upon the joint request of the parties, the Court thereafter adjourned the preliminary injunction hearing until further order, extended the briefing schedule, and scheduled oral argument on the motion for a temporary restraining order and the motion to dismiss for August 2, 2019. (Dkt. 26).

Barnes filed papers in opposition to the motion to dismiss and in further support of the motion for a temporary restraining order and a preliminary injunction on July 15, 2019. (Dkt. 27). C&C filed papers in further support of the motion to dismiss on July 26, 2019. (Dkt. 29; Dkt. 30; Dkt. 31; Dkt. 32). Oral argument on the motion to dismiss and the motion for a temporary restraining order was held on August 2, 2019. (Dkt. 34).

## DISCUSSION

### I.    Motion to Dismiss

#### A.    Standing

As a threshold matter, C&C argues that Barnes lacks standing to bring this action because Barnes failed to comply with the requirements of Federal Rule of Civil Procedure 23.1 in commencing this derivative action. (*See* Dkt. 41-1 at 18-22). In other words, Barnes asserts the claims derivatively on behalf of C&B, as opposed to the action being commenced by C&B in its own right. For the reasons discussed below, the Court agrees with C&C that the Complaint has not satisfied the pleading burden set forth in Rule 23.1.

"Under New York law, a shareholder has no general right to litigate on behalf of a corporation." *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 20 (2d Cir. 2018) (quotation and alterations omitted); *see also Bryan v. W. 81 St. Owners Corp.*, 186 A.D.2d 514, 515 (1st Dep't 1992) ("The right to bring a shareholder's derivative action is secondary and contingent, and arises only in the event that the directors do not comply with a demand that the claims be brought directly." (quotation omitted)). "The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of

action against officers, directors, and third parties." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 233 (2d Cir. 2015) (quotations and citations omitted). To pursue a derivative action, a shareholder must satisfy not only "the generally applicable rules for pleading under the Federal Rules of Civil Procedure," but he must also meet the requirements set forth in Rule 23.1. *Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009), *abrogated on unrelated grounds by Espinoza*, 797 F.3d at 236.

Rule 23.1 requires the plaintiff in a derivative suit to "state *with particularity* any effort by the plaintiff to obtain the desired action from the *directors or comparable authority* and, if necessary, from the shareholders or members; and *the reasons for not obtaining the action or not making the effort*." *Espinoza*, 797 F.3d at 234 (emphasis added) (quotation and alterations omitted). "In other words, a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." *F5 Capital v. Pappas*, 856 F.3d 61, 82 (2d Cir. 2017) (quotation omitted), *cert. denied*, 138 S. Ct. 473 (2017). Alternatively, the shareholder must sufficiently plead futility. *See id.* ("A shareholder plaintiff who does not make a demand on the board must allege that demand is excused.").

"Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law." *Espinoza*, 797 F.3d at 234. New York Business Corporation Law ("BCL") § 626 requires "plaintiffs to demand that the corporation initiate an action, unless such demand [is] futile, before commencing an action on the corporation's behalf." *Marx v. Akers*, 88 N.Y.2d 189, 193 (1996); *see also Horowitz*, 888 F.3d at 20 ("The principal condition is that the putative derivative litigant attempt to

get the corporate board to act or, alternatively, explain why such an attempt should be excused."). "The same principle applies when a receiver is in charge" of the corporation's affairs, and in such a case, "pre-suit demand must be made on that receiver, which stands in the place of the managing body." *Horowitz*, 888 F.3d at 20 (quotation omitted).

"[A] plaintiff's pleading burden under Rule 23.1 is . . . more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), *aff'd sub nom. Levner v. Prince Alwaleed*, 61 F.3d 8 (2d Cir. 1995). Third-party defendants such as C&C have standing "to seek dismissal based on a plaintiff's failure to sufficiently plead demand under Rule 23.1." *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 409 n.7 (S.D.N.Y. 2007) (quotation omitted).

Here, Barnes has not alleged that he made a demand on C&B's board of directors (or any other comparable authority) prior to commencing this derivative action, but has instead attempted to plead demand futility. Barnes alleges that a pre-suit demand would have been futile because Ross Cellino "has an inherent conflict of interest in the instant matter" due to his relationship with the C&C Attorneys and further expressly stated that he would not consent to the initiation of this litigation. (Dkt. 8 at ¶¶ 130-36).

C&C does not contest that it would have been futile for Barnes to make a demand on C&B's board of directors. Instead, C&C argues that, under the particular circumstances of this case, Barnes had another alternative available to him—namely, that he could have sought permission from Justice Chimes in the Dissolution Proceeding for C&B to commence this action, effectively overriding Ross Cellino. (Dkt. 24-1 at 18). C&C further

argues that the status quo orders in fact required Barnes to take this step, and that his failure to do so was a violation of those orders. (*Id.* at 19-20).

The Court is persuaded that the Complaint fails to satisfy the pleading requirements of Rule 23.1 and BCL § 626. In particular, the Court finds that (1) Barnes could have asked Justice Chimes to order the commencement of this action by C&B notwithstanding Ross Cellino's objections and (2) Barnes has failed to plead that it would have been futile to make such a request.

In opposition to C&C's motion to dismiss, Barnes has vigorously argued that the status quo orders did not *require* him to receive advance permission from Justice Chimes prior to commencing this action. The Court need not and does not resolve that issue. In other words, the Court does not opine on whether the status quo orders required approval from Justice Chimes before litigation was commenced on behalf of C&B in the ordinary course of business. Instead, the dispositive inquiry is not whether Barnes was required to seek permission from Justice Chimes, but whether Justice Chimes was permitted by state law to grant C&B permission to commence this action notwithstanding Ross Cellino's refusal to consent. If Justice Chimes could have authorized the initiation of federal trademark litigation by C&B, she would constitute a "comparable authority" under Rule 23.1, and Barnes would be required to plead with specificity what efforts he made to obtain her permission or why such efforts were not made.

Barnes has not argued that Justice Chimes lacked the authority to authorize C&B to commence this action over the objection of Ross Cellino, nor does the Court believe that such an argument would be viable. To the contrary, BCL § 1113 expressly permits the

judge presiding over a dissolution proceeding to "make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation." BCL § 1113; *see also Matter of HGK Asset Mgmt., Inc.*, 238 A.D.2d 291, 292 (1st Dep't 1997) (explaining that BCL § 1113 grants the judge presiding over a dissolution proceeding "broad supervisory and injunctive powers"). Moreover, the status quo orders indicate that to the extent either Barnes or Ross Cellino finds it necessary to change the status quo while the Dissolution Proceeding is pending, "their recourse is the petition of the Court and not to take matters in their own hands[.]" (Dkt. 24-10 at 3).

This action expressly purports to be an attempt to preserve C&B's intellectual property, bringing it squarely within the purview of BCL § 1113. While Barnes and Ross Cellino are each 50% co-owners of C&B and generally would control the commencement of litigation on the corporation's behalf (*see* Dkt. 24-6 at ¶ 18), Justice Chimes, as the judge presiding over the Dissolution Proceeding, could have ordered such action to be taken, effectively overruling Ross Cellino's objections. However, it is undisputed that she was never given the opportunity to do so.

Barnes does not dispute that he never asked Justice Chimes to order that C&B be permitted to commence the instant action, contending only that his counsel advised Justice Chimes that he "intended to initiate separate legal proceedings against Defendant in Federal Court for trademark infringement and unfair competition," and that Justice Chimes did not "raise[] any objections." (Dkt. 27 at ¶¶ 13, 16). These averments by Barnes' counsel (which are contested to some degree by C&C) establish, at most, that Justice Chimes did not, at the conference at issue, state that her permission was required to

- 9 -

commence a derivative action.  Importantly, they do not establish that Justice Chimes would not or could not have entertained a request that C&B be authorized to commence such federal trademark litigation.  In other words, even if Justice Chimes' consent was not required to commence this litigation, it certainly was an avenue available to Barnes that was never pursued and therefore undermines the adequacy of Barnes' allegations concerning demand futility.

The Court also finds that it is consistent with BCL § 626 to require that, where a dissolution proceeding is ongoing, a shareholder seeking to bring a derivative action must first ask the judge presiding over the dissolution proceeding to force the corporation to act. In this regard, the Court finds particularly persuasive the Second Circuit's holding that where a receiver has been appointed over a corporation's affairs, "pre-suit demand must be made on that receiver, which stands in the place of the managing body." *Horowitz*, 888 F.3d at 20 (quotation omitted); *see also Maxwell v. Stein*, No. 93 CIV. 2830 (PNL), 1993 WL 512907, at *4 (S.D.N.Y. Dec. 3, 1993) (dismissing derivative claim because "no demand was ever made on the equity receiver"), *aff'd*, 28 F.3d 103 (2d Cir. 1994).  While this case does not involve a receiver—the Court's understanding is that a receiver has been appointed in the Dissolution Proceeding, but only for a limited purpose not relevant here— BCL § 1113 (and the status quo orders) function to place Justice Chimes in a position very much like a receiver, in that she is empowered to authorize corporate action by C&B notwithstanding the objections of the board of directors and/or the shareholders.

In sum, the Court finds that under the circumstances of this case, if Barnes wanted C&B to commence the instant action on its own behalf, he had two options available to

- 10 -

him.  First, he could have sought consent from Ross Cellino.  Barnes has plausibly alleged

that it would have been futile for him to pursue this option, because it was clear that Ross

Cellino would refuse.

Second, Barnes could have asked Justice Chimes to authorize the commencement

of this litigation.  It is undisputed that he did not do so.  Barnes also has not pled (and could

not plausibly plead) that it would have been futile to make such a request, because neither

Barnes nor this Court has any basis to assume what the outcome of such a request would

have been.  Barnes has therefore not pled with specificity, as required by Rule 23.1, "the

reasons for . . . not making the effort" to "obtain the desired action" from the "comparable

authority" (that is, Justice Chimes) prior to bringing this action in a derivative capacity.

Dismissal of the claims for lack of standing is appropriate.

> **B.**     **Mootness**

C&C has also argued that the Court should dismiss this action because it has been

mooted by their voluntary cessation of the challenged conduct, thereby depriving the Court

of jurisdiction.   (*See* Dkt. 24-1 at 15-17).   However, because the Court has already

determined that dismissal under Rule 23.1 is warranted, the Court need not and does not

reach this argument. *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797

F.3d 148, 156 (2d Cir. 2015) (holding that a "derivative standing question" is "the type of

threshold inquiry a court may make before engaging in a jurisdictional analysis").

**CONCLUSION**

For the foregoing reasons, the Court grants C&C's motion to dismiss.  (Dkt. 24).

This dismissal is without prejudice to any claims that may be raised by Barnes on behalf

of C&B following proper presentation of the request to Justice Chimes.  *See Kernaghan v. Franklin*, No. 06CIV1533LTSMHD, 2008 WL 4450268, at *10 (S.D.N.Y. Sept. 29, 2008). Because the case is dismissed, Barnes' motion for a temporary restraining order and a preliminary injunction (Dkt. 4) is denied as moot.

   SO ORDERED.

           ELIZABETH A. WOLFORD
           United States District Judge

DATED:  August 5, 2019
      Rochester, New York